# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1303WM

_____

| | | |
|---|---|---|
| Amalgamated Transit Union<br>Local No. 1498, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| | * | of Missouri. |
| Jefferson Partners, doing business as | * | |
| Jefferson Lines, L.P., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 15, 2000

Filed: October 18, 2000

_____

Before RICHARD S. ARNOLD, Circuit Judge, BATTEY[1] and MOODY,[2] District
    Judges.[3]

_____

[1]The Hon. Richard H. Battey, United States District Judge for the District of
South Dakota, sitting by designation.

[2]The Hon. James M. Moody, United States District Judge for the Eastern District
of Arkansas, sitting by designation.

[3]Pursuant to 28 U.S.C. § 46(b), the Chief Judge certified the existence of a
judicial emergency necessitating the designation of a panel consisting of fewer than two
members of the Court of Appeals.

RICHARD S. ARNOLD, Circuit Judge.

Jefferson Partners L.P. appeals the District Court's[4] denial of its motion to vacate an arbitration award. This case arises from an arbitration award granted after an arbitrator determined that Jefferson broke its collective-bargaining agreement with Amalgamated Transit Union, Local No. 1498. Jefferson argues that the arbitrator's award exceeds his authority and does not draw its essence from the collective-bargaining agreement. We affirm.

I.

Jefferson conducts a commercial bus operation serving passengers in approximately eight mid-western states. The Union represents certain Jefferson employees. Jefferson and the Union entered into a collective-bargaining agreement effective March 1, 1995, through February 28, 1999. The agreement established a five-tiered wage scale based upon seniority.

In 1998, Jefferson instituted a single-rate wage increase in order to attract applicants to entry-level driving positions within the company.[5] According to the wage increase, all employees would be paid wage rates at the highest tier. No employee would suffer a decrease in pay; however, each employee would receive a different increase in pay depending upon how far he or she was from the fifth tier. Those employees already in the fifth tier received no wage increase.

---

[4]The Hon. Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[5]Previously, in 1993, Jefferson had instituted a wage increase for all of its employees that maintained the tiered wage scale.

-2-

The Union filed a charge with the National Labor Relations Board and invoked the agreement's arbitration provisions. Proceedings before the NLRB were deferred pending the arbitrator's decision as to whether Jefferson had broken the agreement. Jefferson and the Union directed the arbitrator to determine an "appropriate remedy" in the event he found a breach. Likewise, both parties agreed that the arbitrator would frame the issues. According to the arbitrator, the issues were the following:

> Whether the company violated the collective bargaining agreement and/or the past practices of the parties by unilaterally modifying the wage rates of bargaining unit members? If a violation occurred, what is the appropriate remedy?

The record does not indicate that Jefferson objected to the arbitrator's manner of framing the issues.

The arbitrator determined that Jefferson violated the agreement by instituting a unilateral wage increase[6] the effects of which destroyed the distinctions of the tiered wage system. The arbitrator stated that the only "fair" way to rectify this violation was to grant a wage increase to those employees denied an increase in 1998. The arbitrator determined that it would be "inequitable" and "impractical" to have those employees who received a wage increase to give the money back. The arbitrator awarded a wage increase to those employees in the highest tier, which comprised approximately 40 per cent. of the bargaining unit.[7] The arbitrator ordered that the "payment shall be the same percentage wage increase that was paid to members of the bargaining unit who received the 1998 increase and shall be for the same duration."

---

[6]Jefferson does not contest this finding on appeal.

[7]The arbitrator found that Jefferson "increased wages to approximately 60% of employees in 1998 and did not increase wages for the remaining senior employees."

Jefferson's motion to reconsider was denied. In explaining his denial of the motion to reconsider, the arbitrator stated that Jefferson's unilateral wage increase was "in derogation of the bargained for wage scale," "discriminatory" in violation of the National Labor Relations Act Section 7, 29 U.S.C. § 157, discouraging to union membership, and "a prohibited practice" under Section 8(a)(3) of the Act, 29 U.S.C. § 158 (a)(3).

The Union filed suit in the District Court to enforce the arbitrator's award. In opposition to enforcement, Jefferson argued that the award impermissibly amended the labor agreement, thus exceeding the arbitrator's authority. Pointing to the arbitrator's reference to the Act in his letter denying the motion to reconsider, Jefferson argued that the award did not draw its essence from the agreement but came instead from the arbitrator's own sense of fairness and industrial justice.

The District Court held that even though the agreement declares it can not be amended or altered by an arbitrator,[8] Jefferson is bound by its consent to have the arbitrator fashion an appropriate remedy. According to the Court, an arbitrator may consider relevant provisions of the NLRA, "if only to insure that a particular remedy does not constitute an unfair labor practice or other violation of the Act." Amalgamated Transit Union, Local No. 1498 v. Jefferson Partners, L.P., No 99-327, slip op. at 6 (W.D. Mo., Jan. 6, 2000). Furthermore, the Court held that the remedy drew its essence from the agreement because it reinstated the tiered effect of the pre-1998 wage scale. Id. at 7.

---

[8]Article 42.8 of the agreement provides, "arbitrators shall have no power to alter or amend the provisions of this contract in any respect."

## II.

We review a district court's conclusions of law de novo. Homestake Mining Co. v. United Steel Workers of America, 153 F.3d 678, 680 (8th Cir. 1998). A federal court reviews an arbitration award only to see whether the " 'award draws its essence from the collective bargaining agreement,' and is not merely [the arbitrator's] own brand of industrial justice,' " United Paperworkers Int'l. Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). The arbitrator, however, "is not free to ignore or abandon the plain language of the CBA, which would in effect amend or alter the agreement without authority." Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1468 (8th Cir. 1996). "In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority." Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, Dist. 271, 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc).

## A.

Jefferson first contends that by imposing a wage increase for which it did not bargain, the arbitrator acted outside of his authority and effectively amended the agreement. Jefferson argues that in requesting the arbitrator to devise an "appropriate remedy" it did not consent to the arbitrator's remedial wage increase. We disagree. Jefferson characterizes its request for an appropriate remedy as a "logical request that accompanies *any* arbitral submission." Brief for Appellant 20. Even if this is true, the fact remains that it was the arbitrator's job to fashion a remedy. The courts must defer to his choice, within very broad limits. It is true that the remedy — raising the top tier a proportionate amount in order to preserve the spacing among the tiers contemplated by the labor agreement — is not expressly provided for in the agreement. But contracts often lack explicit provisions for specific kinds of remedies. The company's breach

(which it does not now dispute) had already disturbed the contractual wage scale. The arbitrator's choice of remedy is one way to restore the balance. Nothing in the contract prohibits this choice.

B.

Next, Jefferson argues that the arbitrator's award did not draw its essence from the agreement but instead arose from the arbitrator's own sense of fairness. Jefferson points to the arbitrator's use of the word "fair" in his description of the award. Although "the arbitrator's decision must draw its essence from the agreement, he 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.' " Misco, Inc., 484 U.S. at 41 (quoting Enterprise Wheel & Car Corp., 363 U.S. at 597). We agree with the District Court that the arbitrator's use of the word "fair" reflected his concern to fashion a remedy consistent with the Act and with the parties' past practices and expectations. See United Elec., Radio & Machine Workers, Local 1139 v. Litton Microwave Cooking Prods., 704 F.2d 393, 402 (8th Cir. 1983) (dissenting opinion) ("absent express limitations, and as long as the remedy is not clearly unfair, courts should enforce the arbitrator's award"), *cited with approval in* United Elec., Radio & Machine Workers, Local 1139 v. Litton Microwave Cooking Prods., 728 F.2d 970, 972 (8th Cir. 1983) (en banc). Likewise, it is desirable that an arbitrator be mindful of the mandates and protections of the NLRA when designing an award.

Moreover, we believe the award does draw its essence from the labor agreement. In Int'l Woodworkers of Am. v. Weyerhauser Co., 7 F.3d 133 (8th Cir. 1993), cert. denied, 511 U.S. 1128 (1994), we held,

> The essence of a collective bargaining agreement cannot always be divined by the same process that a court uses in construing a more typical commercial contract. As the

Supreme Court explained in its landmark Steelworkers Trilogy, "The collective agreement covers the whole employment relationship. It calls into being a new common law--the common law of a particular industry or of a particular plant." [Citations omitted.] Therefore, "the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practice of the industry and the shop – is a part of the collective bargaining agreement although not expressed in it."

Weyerhauser, 7 F.3d at 135 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 579 (1960)).

In the agreement at issue here, the members of the bargaining unit and Jefferson agreed to a tiered wage scale based on seniority. Jefferson's 1993 unilateral wage increase benefitted all of its employees, thus preserving the tiered wage scale. However, Jefferson's 1998 unilateral wage increase destroyed the essence of that tiered wage system by granting fifth-tier wages to all employees regardless of seniority. The arbitrator's award reinstated the essence of the wage scale by awarding those employees in the fifth tier an increase commensurate with wage increases awarded to less senior employees.

C.

We also reject Jefferson's contention that the Court should vacate the award because it is not compensatory in nature but fashioned to promote union participation. This award is compensatory in nature. In Litton, the employer forced certain employees to take a paid vacation in the month of March. Litton, 728 F.2d at 972. An arbitrator determined that the employer's actions were contrary to the collective-bargaining agreement and ordered the employer to allow those employees a second

paid vacation during the summer. Id. at 971. The arbitrator determined, and we deferred to his finding, that the employees who were forced to take the March vacations were deprived of their right to "take vacation during a preferred time of year." Litton, 704 F.2d at 402 (dissenting opinion). The senior employees here are not dissimilar. Like the employees in Litton, the senior employees in the fifth tier were deprived of their right, under the agreement, to receive higher wages than less-senior employees. Thus, the arbitrator's award was compensation for Jefferson's violation of that right.

## D.

Lastly, Jefferson argues that an appropriate remedy would have been to order those employees who benefitted from Jefferson's wage increase to repay the money to the company or to order the parties to adhere to the bargained-for wage rates in the future. However, "it is not for us to decide whether we would have awarded this particular relief." Id. at 972. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." Misco, Inc., 484 U.S. at 38.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-