# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3630

_____

Mark J. Hoffman,                                  *
                                                  *
            Appellee,                             *
                                                  *    Appeal from the United States
      v.                                          *    District Court for the Northern
                                                  *    District of Iowa.
Cargill Incorporated,                             *
                                                  *
            Appellant.                            *
                                                  *
National Grain and Feed Association,              *
                                                  *
            Movant.                               *
_____                                       *
                                                  *
National Grain and Feed Association,              *
                                                  *
      Movant/Amicus on behalf                     *
      of Appellant.                               *
                                                  *

_____

Submitted:  November 15, 2000

Filed:  January 9, 2001

_____

Before BOWMAN, FAGG and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Cargill Corporation appeals the district court's order vacating an arbitration award. Because the district court exceeded its authority, we reverse.

Between fall of 1995 and winter of 1996, Mark Hoffman, an Iowa farmer, entered into ten contracts to supply Cargill with 475,000 bushels of corn. Five of these called for delivery of "old crop" corn between February and July of 1996. The other five called for delivery of "new crop" corn between December 1996 and February 1997. Each contract required the submission of disputes to binding arbitration before the National Grain and Feed Association ("NGFA").

The contracts required Hoffman to deliver the corn to Cargill at its Blair, Nebraska, facility but also provided that Cargill could "designate any reasonable alternative delivery points if necessary." To weigh each corn delivery, an incoming driver would drive onto a truck scale and then signal Cargill's operator to take a gross weight. The driver would then dump the grain into a hopper, from which a conveyer transported it into the milling facility. The trucker would then signal the operator to take a "tare" weight with the difference between the gross and the tare weights being the weight of the corn. Cargill believed that the scales could not issue a tare weight until the hopper was empty and all of the grain's weight was removed from the scale.

At the time they were signed, the contracts offered Hoffman a premium above the then-market price for corn. At the time of delivery, however, the market price had risen well above the contract price.

Hoffman commenced performance under the contracts, and delivered 27,928 bushels of corn. At the same time he began complaining to Cargill that its scales were consistently "shorting" him by taking higher-than-expected tare weights, and thus under-weighing the delivered corn. In an effort to alleviate Hoffman's concerns, Cargill offered to weigh his trucks at a neighboring facility, Terra International, at Cargill's expense . Alternatively, it offered to take delivery at an elevator in Council Bluffs,

Iowa, and to pay for the extra transportation costs. Hoffman "tested" the Cargill scale by weighing two deliveries at both Terra and Blair. The first set of weights matched and the second differed by a few hundred pounds. Relying on this purported "failure," Hoffman refused Cargill's alternate delivery arrangements. In July 1996, Cargill offered to accept old or new crop corn later that year against the old crop contracts. Hoffman again refused to deliver. On July 29, 1996, Cargill canceled the old crop contracts and claimed damages of $464,760.14, the difference between the contract price and the then-market price.

Hoffman complained to the Nebraska Department of Agriculture, Weights and Measures Division. The Department tested the scales and determined that they could actually issue a tare weight before the hopper was empty, thus under-weighing the grain. The Department, however, did not assess fault nor did it de-certify Cargill's scales. Rather it noted that both the trucker and the operator played a role in the weighing process. It also found no indication that Cargill knew of the problem. By December 1996, Cargill had rewritten the scales' software and installed sensors in the hopper to prevent the scales from taking premature tare weights.

In October 1996, Hoffman made some deliveries against the new crop contracts. Cargill withheld payment on these deliveries pending determination of its damage claims. Hoffman testified that he understood the scales would be fixed by mid-October. When they were not, he refused to make further deliveries against those contracts. In November 1996, Cargill canceled the new crop contracts.

In December 1996, Cargill initiated arbitration proceedings on the old crop contracts. As required by NGFA rules, Cargill and Hoffman at that time executed a contract submitting to NGFA arbitration. After Cargill submitted its first argument to the arbitration panel, Hoffman attempted to withdraw, challenging the process as inadequate. Hoffman then filed this diversity lawsuit. Cargill responded by asking the district court to compel arbitration. The district court did so but also expressed its deep

discomfort with the arbitration process. The court stated that it was "committed to a post-arbitration review to ensure that any result reached is the product of a fundamentally fair arbitration proceeding."

At arbitration, Cargill sought breach damages of $464,760.14 plus interest on the old crop contracts. Hoffman brought several counterclaims including claims for breach based on the inaccurate scales. In December 1998, after hearing testimony and accepting evidence, the panel issued a unanimous written decision. It found that, given Cargill's right under the old crop contracts to designate reasonable alternative delivery points, Hoffman's refusal to deliver constituted breach. The panel ruled against Hoffman's claims, finding the evidence insufficient to prove that he had been shorted, and awarded Cargill $408,262.50.

Cargill moved the district court to confirm the award. As Hoffman did not timely oppose the motion, the district court granted Cargill's request. Hoffman belatedly filed a motion to vacate the judgment, which the district court did, after which it accepted briefing and evidence as to both the arbitration process and the merits. Ultimately, the district court vacated the panel's decision as "irrational and in manifest disregard of the law," and also as "fundamentally unfair." Cargill has appealed to this court and the NGFA appears as amicus. Hoffman, however, chose not to file a timely brief.[1] Accordingly, the district court's lengthy opinion must speak for itself. We review the

---

[1]Cargill filed its appeal on October 13, 1999. Its brief was originally due on December 6, 1999, with Hoffman's brief due on January 5, 2000. Cargill sought and received an extension and ultimately filed its brief on December 28, 1999. On February 16, 2000, Hoffman sought an extension and received a delayed briefing date of February 29. He then received a second extension to March 13. On April 6, the Clerk of the Court notified Hoffman that if he failed to file within fifteen days, he would forfeit his right to appear. On April 28, after Hoffman failed to file a brief, the clerk notified him of his default.

district court's decision to vacate an arbitration award de novo. Executive Life Ins. Co. v. Alexander Ins. Ltd., 999 F.2d 318, 320 (8th Cir. 1993).

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1-16. Congress passed the FAA in 1925 to overcome "longstanding judicial hostility to arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). It established "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA compels courts to be solicitous of both the arbitration process and its results. The statute requires judicial confirmation of an arbitration award unless it was "procured by corruption, fraud, or undue means," where there was "evident partiality or corruption in the arbitrators," where the arbitrators were guilty of misconduct or where the arbitrators exceeded their authority. 9 U.S.C. § 10(a). Against this background, courts tread lightly in reviewing arbitration awards. "The courts' review of arbitration awards is extremely narrow. The courts' sole function is to decide whether the arbitrators' decision draws its essence from the contract." Executive Life Ins., 999 F.2d at 320. The district court, however, vacated the award on two extra-statutory grounds.

The district court first ruled that the arbitration award was irrational and in manifest disregard of the law. The court ruled that "the record before the arbitrators made it abundantly clear that, contrary to the testimony of Cargill's witnesses, 'short' weights could be and were obtained on the scales." The court pointed to various instances of testimony and exhibits which questioned the accuracy of the scales. The court held that the arbitrators should have considered whether any such short constituted a breach on Cargill's part.

We have allowed that, "'[b]eyond the grounds for vacation provided in the FAA, an award will only be set aside where it is completely irrational or evidences a manifest disregard for the law.'" Val-U Constr. Co. v. Rosebud Sioux Tribe, 146 F.3d 573, 578

(8th Cir. 1998) (quoting <u>Kiernan v. Piper Jaffray Cos.</u>, 137 F.3d 588, 594 (8th Cir. 1988) (quotation omitted)).  These extra-statutory standards are extremely narrow: An arbitration decision may only be said to be irrational where it fails to draw its essence from the agreement, and an arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it.  <u>Stroh Container Co. v. Delphi Indus.</u>, 783 F.2d 743, 749-50 (8th Cir. 1986).  "We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts."  <u>Id.</u> at 751.  Rather, the contract must not be "susceptible of the arbitrator's interpretation."  <u>Local 970 v. B.F. Nelson Folding Cartons, Inc.</u>, 151 F.3d 748, 750 (8th Cir. 1998) (quotation omitted).

In vacating the arbitration award, the district court essentially re-tried the already-arbitrated matter.  The district court accepted evidence on matters and arguments that either were or could have been submitted to the arbitration panel.  The district court simply disagreed with the arbitrators' analysis of the facts.  Despite testimony suggesting that either the driver or Cargill's operator may have been at fault in obtaining the tare weights, the district court chose to blame Cargill.  The district court discounted the evidence regarding the change in corn prices between the time Hoffman signed the contracts and when he refused delivery–evidence which the panel credited.  Moreover, the district court disagreed with the panel's interpretation of Hoffman's contractual duty to accede to Cargill's designation of reasonable alternate delivery points.  The record clearly does not sustain the conclusion that the arbitrators acted irrationally or identified applicable law and then ignored it.

The district court also vacated the award on the grounds that the proceedings were "fundamentally unfair."  The district court took issue with the entire NGFA arbitration process and specifically challenged three elements of that process. First, the district court questioned the method of panel selection because an NGFA panel, being selected from NGFA membership, will necessarily be comprised of grain purchasers

rather than sellers. Second, the district court objected to the lack of discovery, specifically to the lack of an enforceable subpoena. Finally, the district court challenged the NGFA's arbitration appeals process which required the appealing party to post a bond equal to the arbitration award. The district court found that these elements, together, made the process "fundamentally unfair."

We have never recognized "fundamental unfairness" as a basis for vacating an arbitration award. Indeed, our narrow construction of extra-statutory review militates against such a standard. We have repeatedly said that an arbitration award may be challenged "only" in the previously articulated instances. Val-U Constr., 146 F.3d at 578; Kiernan v. Piper Jaffray Cos., 137 F.3d 588, 594 (8th Cir. 1998); Lee v. Chica, 983 F.2d 883, 885 (8th Cir. 1993). While we do not categorically reject the possibility of such a standard, should any such standard exist it could not possibly sustain the district court's conclusion in this particular case, especially given the lack of briefing from the party who would profit by this newly minted precept.

Arbitration is not a perfect system of justice, nor it is designed to be. See Gilmer, 500 U.S. at 30-32 (discussing the differences between litigation and arbitration). "[W]here arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication." Stroh Container, 783 F.2d at 751 n.12. Arbitration is designed primarily to avoid the complex, time-consuming and costly alternative of litigation.

> In the arbitration setting we have almost none of the protections that fundamental fairness and due process [usually] require. . . . Discovery is abbreviated if available at all. The rules of evidence are employed, if at all, in a very relaxed manner. The factfinders (here the panel) operate with almost none of the controls and safeguards [expected in litigation].

<u>Lee</u>, 983 F.2d at 889 (Beam, J. concurring in part and dissenting in part).  Arbitrators need not even articulate reasons for their decisions.  <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 58 (1974).  Having entered such a contract, a party must subsequently abide by the rules to which it agreed.  <u>Val-U Constr.</u>, 146 F.3d at 579-80.

If a "fundamental unfairness" standard exists, it must apply to arbitration schemes so deeply flawed as to preclude the possibility of a fair outcome.  Such is not the case in this matter.  The NGFA has been formally arbitrating cases since 1901 and the record does not sustain the charge that it systematically favors buyers over sellers.  In drafting the FAA, Congress specifically chose to not empower arbitration parties with an enforceable subpoena, precisely to avoid the costs and delays of full-blown litigation.  Finally, the NGFA's choice to provide an appellate proceeding, not required by statute, should not be grounds for attacking its form.  The district court's ruling merely imported the very elements of litigation that arbitration seeks to avoid.  Nothing compels us to conclude that this process was fundamentally unfair.

We reverse the district court and remand with instructions to confirm the arbitration panel's award favoring Cargill.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-