# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1780

_____

| | | |
|---|---|---|
| Gas Aggregation Services, Inc., doing business as Gas Services, Inc., | * * * | |
| Plaintiff-Appellant, | * * | |
| v. | * * | |
| | * | Appeal from the United States |
| Howard Avista Energy, LLC, | * | District Court for the |
| Howard Energy Marketing, Inc., | * | District of Minnesota. |
| | * | |
| Defendants Third Party | * | |
| Plaintiffs-Appellees, | * * | |
| Manjit Bajwa, | * * | |
| Third Party Defendant. | * | |

_____

Submitted: November 7, 2002

Filed:  February 24, 2003

_____

Before WOLLMAN, LAY, and LOKEN, Circuit Judges.

_____

LAY, Circuit Judge.

Gas Aggregation Services, Inc. ("GSI") appeals from an order of the district court[1] vacating portions of an arbitration panel's award. We affirm in part and reverse in part.

## I.  BACKGROUND

GSI is a Minnesota corporation that operates as a natural gas marketing company, specializing in providing natural gas needs of utilities in Minnesota and elsewhere. GSI contracts for the purchase and sale of gas and for transfer and storage from the producers or owners of the gas to purchasers. Howard Avista Energy LLC, and Howard Energy Marketing, Inc. ("Howard") are Delaware corporations with their principal place of business in Michigan. Howard is a full service gas trading company which buys and sells large quantities of natural gas as a commodity and also provides gas supply services to utilities, marketers, and industrial customers in Michigan and elsewhere.

In 1998, GSI and Howard entered into a series of four joint venture transactions, combining GSI's expertise in natural gas storage and transportation with Howard's ability to provide credit and act as guarantor for these transactions. Natural gas volumes to service the joint ventures were to come from GSI or from Howard as circumstances required and availability dictated. GSI and Howard frequently transferred natural gas between themselves from one to the other to service the joint ventures. In addition, GSI and Howard also engaged in several isolated sales of natural gas between each other that were unrelated to the joint ventures.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

In the course of carrying out these joint ventures, disputes arose between GSI and Howard concerning responsibilities of each of the parties, and concerning the sales price of natural gas transfers between the parties.

In April 1999, GSI filed suit against Howard in district court claiming breach of contract, fraud, violation of the Minnesota Consumer Fraud Act, tortious interference with prospective economic advantage and contractual relations, breach of fiduciary duty, conversion of partnership business opportunities, conversion, demand for accounting, and unjust enrichment. GSI and Howard subsequently entered into an agreement to submit the dispute to binding arbitration. The agreement provided: "All claims in this action and among the parties shall be arbitrated by a three-person panel." Pursuant to this agreement, each party chose a selected representative arbitrator, and by agreement selected a third neutral member who was an expert in natural gas sales and transportation.

The parties presented evidence and arguments to the arbitration panel through briefs and five days of hearings. The panel issued an award and dissent on July 10, 2001. A Supplemental Award and Dissent for Attorneys' Fees, Costs, and Interest was issued on September 19, 2001, finding in favor of GSI on all issues. The panel awarded GSI $466,945.25 as its share of profits for the parties' joint ventures; $679,000.00 as the proper balance on its trading account; $959,447.00 as consequential damages for the loss of GSI's business; $142,196.00 as interest on an NSP receivable; $250,725.00 in reasonable attorneys' fees; $97,646.15 in costs of arbitration; $25,885.15 for miscellaneous costs; and prejudgment interest of $242,120.11.

GSI moved the district court to confirm the arbitration award. Howard filed a motion to vacate four specific portions of the arbitration award relating to: (1) the general trading account; (2) the loss of business damages; (3) attorneys' fees, costs, and interest, and (4) an NSP receivable. Howard argued that the award "failed to

draw its essence" from the subject contracts, exhibited a manifest disregard of the law, failed to make a final and complete resolution of the dispute, and wholly lacked support in the record.

The district court vacated the portions of the award dealing with the general trading account, the loss of business damages, and the attorneys' fees, costs and interest, on the grounds that the award failed to draw its essence from the contract, manifested a disregard of the applicable law, and did not make a final determination of the issues with respect to attorneys' fees, costs, and interest.

GSI timely appealed the district court's order. We have jurisdiction pursuant to 28 U.S.C. § 1291 (2000). We review a district court's decision to vacate an arbitration award *de novo*. Executive Life Ins. Co. of New York v. Alexander Ins. Ltd., 999 F.2d 318, 320 (8th Cir. 1993).

## II. DISCUSSION

The district court vacated significant portions of the arbitration panel's award, finding that the panel ignored "unambiguous terms of the underlying contract." The central issue before this court is the determination of what contract, if any, governs the parties' dispute. In its findings, the district court cites one of Howard's general provisions documents as containing the controlling contractual language as to the issues concerning the general trading account and loss of business damages. GSI argues that the issues regarding the parties' general trading account balance and the loss of business damages flowed from Howard's behavior within the parties' joint venture activities, and were not connected to a single gas transaction, for which the transaction confirmations were generated. Accordingly, GSI disagrees that these documents controlled any of the issues that flowed from their joint venture relationship, and, in addition, contends these documents were inaccurate.

-4-

GSI argues that the arbitration panel did not address this issue in their award because it was not raised during the arbitration.[2] It is significant that the panel did not identify this as an issue for arbitration. That omission supports GSI's assertion that this was not identified as an issue or argued before the arbitration panel.

Further, the general provisions document which Howard cites as being controlling, contains an arbitration clause.[3] This clause provides for binding

[2]This case has been clouded by Howard's striking change of strategy and focus, which occurred contemporaneously with their change in counsel between the arbitration hearing, and their motion in district court for vacation of the arbitration award. For the first time before the district court Howard vigorously asserted that the contract which was controlling as to the parties' trading account and limitation of damages was the boilerplate general exclusions contract which allegedly was generated with each transfer of gas between the parties, and which, by its unambiguous language, applied if at all, only to the single gas trade for which it was generated. We are satisfied from the record that the issue of whether this general provisions controlled the parties' joint venture behavior was not raised before the arbitration panel. To raise this issue as the primary and controlling issue before the district court when it was not properly raised for the arbitration panel's consideration necessarily precludes it from review by the district court. The district court's review is limited to those issues that were raised before the arbitration panel.

[3]Howard General Provisions Natural Gas Purchase/Sale Contract and Confirmation, at ¶ 14.

> Arbitration.  Any dispute between the parties relating to the interpretation of this Agreement and not resolved by agreement shall be determined by a sole arbitrator upon notice given by either party, which shall identify a representative. Within 10 days of receipt of notice, the other party shall name a representative. The two representatives shall select as the sole arbitrator an individual having expertise in natural gas sales and transportation, or failing to do so in 30 days, the arbitrator shall be selected by the senior judge of the U.S. District Court for the district in which the party noticing arbitration is located. The rules of civil procedure for such district shall govern the arbitration. The

arbitration of any dispute concerning the interpretation of the general provisions document by a sole arbitrator, and requires an arbitrator to hear the case and render a decision within 120 days of appointment. Significantly, this clause was not invoked. Instead, after GSI filed suit in district court, the parties voluntarily stipulated to arbitration of all issues by a panel of three, which took greater than 120 days to hear the case and render its decision. This further supports GSI's assertion that prior to their motion to vacate the award, Howard did not argue that the general provisions contract was controlling as to the general trade account or the issue of limitation of damages for loss of business.

A. Standard of Review of Arbitrators' Awards

A court's review of an arbitration award is very limited. Lee v. Chica, 983 F.2d 883, 885 (8th Cir. 1993). Where parties agree to arbitrate, a court cannot substitute a judicial determination for the arbitrator's decision. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40-41 n.10, 108 S. Ct. 364, 371 (1987). Courts may not review the merits of an arbitration award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002)(quoting Misco, 484 U.S. at 36). Even if the court is convinced that the arbitrator committed serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," arbitration awards must be confirmed. Bureau of Engraving, 284 F.3d at 824 (quoting Misco, 484 U.S. at 38).[4]

_____

arbitrator shall promptly hear the question(s) submitted and shall render a written decision within 120 days of appointment with such decision being binding on the parties.

[4]For purposes of determining the correct standard of review, this circuit has not distinguished between cases in which pre-dispute arbitration agreements exist versus

-6-

Although limited, arbitration awards are not entirely free from judicial review. The Federal Arbitration Act ("FAA") provides limited grounds on which an arbitration award may be vacated. 9 U.S.C. §§ 1-16 (2000). The FAA requires that an arbitration award be upheld unless it is obtained by "corruption, fraud, or undue means;" where there is "evident partiality or corruption in the arbitrators;" where there was misconduct by the arbitrators; or where the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(1)(2).

This court has held that beyond the grounds provided in the FAA, an arbitration award will be vacated only where it is "completely irrational or evidences a manifest disregard for the law." Hoffman v. Cargill Inc., 236 F.3d 458, 461(8th Cir. 2001)(citing Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe, 146 F.3d 573, 578 (8th Cir. 1998)).

An arbitrator is not free to ignore or abandon the plain language of the parties' agreement. Boise Cascade Corp. v. Paper Allied-Industrial, Chemical and Energy Workers (PACE), Local 7-0159, 309 F.3d 1075, 1081 (8th Cir. 2002). An arbitration award has been held to be irrational where it fails to draw its essence from the agreement. Hoffman, 236 F.3d at 462. "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Boise, 309 F.3d at 1080 (quoting Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen, 39 F.3d 821, 825 (7th Cir. 1994).

---

those in which the parties stipulate to arbitrate disputes during litigation. However, we endorse the view of the Second Circuit, which has held that when parties agreed during litigation to arbitrate certain disputes, the arbitrators have discretion to rule on each legal question and fact necessary to resolve the disputes. See Fed. Commerce & Navigation Co., v. Kanematsu-Gosho, Ltd., 457 F.2d 387 (2nd Cir. 1972) (holding "[a]n arbitrator is entitled to pass on every question of law or fact necessary to the disposition of the issue submitted to him.")

But where there is no clear and unambiguous agreement, the arbitrator must utilize other sources to determine the parties' intent. As this court has previously held, "[d]etermining the intent of the parties is the essential inquiry; if the written agreement is silent, the arbitrator may consider past practices and bargaining history to fill gaps." Boise, 309 F.3d at 1081-82 (internal quotation marks and citation omitted). "On the other hand, where the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent." Id.

### B. Arbitration

Based on arguments and evidence, the arbitration panel organized the issues for arbitration into the following categories: (1) The nature of the parties' business relationship; (2) accounting for profit and loss from the parties' joint venture activities; (3) accounting for GSI's general trading account with Howard; (4) GSI's claim for loss of business; (5) GSI's claim for attorneys' fees; (6) prejudgment interest; (7) arbitration costs and fees; (8) disposition of the NSP receivable assigned by GSI to Howard; and (9) other claims and issues.

Significantly, the arbitration panel did not identify the issue of what contract controls the issues of the general trading account or loss of business damages as an issue to be determined.

### C. General Trading Account Award

The district court granted Howard's motion to vacate three of the four specifically identified awards.[5] First, the district court vacated the portion of the

---

[5]The arbitration panel granted the award of $600,000 in accounts receivable from NSP to GSI. The district court affirmed this portion of the arbitration award.

award related to parties' general trading account, finding that the panel majority ignored the unambiguous terms of the underlying contracts.

GSI contends that the issues regarding the general trading account flow from the parties' joint venture relationship, for which there is no written contract. GSI and Howard engaged in multiple varied business transactions. The panel's award indicated that the written documentation for the joint ventures consisted of letters of agreement dated: April 22, 1998; June 8, 1998; and June 10, 1998, and transaction confirmation documents.

The panel majority described the dispute concerning the general trading account as focusing on four (4) accounting issues:

> (1) the correct beginning balance of the account (2) whether any price adjustments should be made for prices accounted for by Howard on the agreed volumes of gas bought and sold, (3) whether GSI is responsible for hedge activity accounted for by Howard for its account after November 1, 1998, and (4) the appropriate accounting reconciliation for payments and receipts of the parties in, and net profit from, their joint venture activities with general trading account.

Arbitrator's Award And Dissent at 23.

First, GSI contended that the October 31, 1998 beginning balance of the account did not include profit from three hedge transactions, and the trading account beginning balance should have reflected a credit of $112,654.02 to GSI. Howard contended that the profits from the hedge transactions were credited to GSI in determining the final balance. The panel determined that GSI's beginning balance should be adjusted to reflect the profit of the three hedge transactions.

---

The district court's decision regarding this award is not challenged on appeal, and accordingly we do not address it.

Second, Howard argued that sales prices of physical gas sales should not be adjusted because the prices were documented by its business records. The accuracy of Howard's business records was disputed by GSI, with GSI contending that these transaction confirmations were at least inaccurate and possibly fraudulent. GSI argued that the prices documented on Howard's business records should be adjusted to market prices or seasonal averages. The panel concluded that the price adjustments sought by GSI for its gas purchases should be made, but not those proposed for its sales to Howard. The panel majority found that the amount of the price adjustment (reduction) for the cost of physical gas should be $234,000 to GSI, based upon its conclusion that Howard imposed prices higher than market on GSI for Farwell gas purchases, when the above market cost of the Farwell gas was a joint venture responsibility.

Third, GSI contended that it did not authorize hedge transactions with Howard after November 1, 1998, and therefore the associated losses are not collectible from it. The panel agreed and credited GSI.

Fourth, the panel concluded that the final balance of GSI's trading account with Howard should be a credit of $679,000.

The court did not address each component of this trading account award individually, but held generally that the transaction confirmation documents, generated by Howard for each natural gas transaction, exclusively determined the rights and obligations of the parties concerning GSI's trading account. The district court stated:

> According to defendants, contracts evidenced by the transaction confirmations generated and maintained by defendants for each transaction exclusively determined the rights and obligations of the parties concerning GSI's Trading Account. Because the court finds that

> the arbitration panel ignored those contractual terms, the court vacates that portion of the arbitration award.

Dist. Ct. Order at 6 (internal citation omitted).

The district court held that by determining that a monthly average market price should be substituted for the price term listed on the trade confirmation, the panel ignored an unambiguous contract term, and exceeded their authority.

The district court erred. There was no unambiguous contract term to which the panel could look to determine the parties' intent. As the panel majority indicated, the trading account dispute involved transactions between GSI and Howard that went beyond one-time transfers of gas between the parties, and touched on hedge transactions as well as joint venture net profit. The clear language of the transaction confirmation general provisions document provides that the contractual terms set forth in the document are controlling only as to that gas transaction, and applies only in the absence of another agreement. The general provisions contract was limited to the transaction for which it was generated, and then only if there was no other agreement in existence between the parties. It is clear that any award based on a breach of the parties' joint venture relationship could not be controlled by a general provisions document with application limited to a one-time sale of gas between the parties.

In addition, the plain language of the transaction confirmation indicates that it is not binding on the other party if challenged within ten days: "this confirmation shall be final and binding, whether or not signed or confirmed by counterpart, unless counterpart advises Howard Energy of any inaccuracy within ten days." There was evidence presented to the panel by GSI that once received, they immediately disputed the terms and challenged at least one of these documents as being fraudulent.

In addition, GSI contends that it did not receive transaction confirmations on all of its gas transfers with Howard in a timely manner despite repeated requests. GSI

-11-

argued that it requested an accounting from Howard multiple times, but that no accounting was forthcoming from Howard until just prior to the arbitration. Consequently, the contractual language in these general provisions documents may not have been controlling even as to the individual transactions for which they were generated.

In the absence of clear and unambiguous contractual language, an arbitration panel must look to other sources to determine the parties' intent. Here, the arbitration panel accepted briefs and conducted five days of hearings.

Due to the conflicting evidence regarding these transactions, the determination of the existence of any agreement between the parties was ultimately a credibility determination, on which there is no judicial review of the arbitration panel's finding. The panel's award stated that all of the evidence was considered and carefully weighed.

In determining the issues regarding the parties' joint venture and hedge activities, the arbitration panel looked to other relevant sources of the parties' intent, past practice and bargaining history, as well as industry practice to fill the gaps. This is precisely what our opinion in <u>Boise</u> required in the absence of clear and unambiguous contractual language. <u>Boise</u>, 309 F.3d at 1081-82. Here, there was no controlling contractual language. The panel was required to weigh the evidence in order to discern the parties' intended agreement, and they did not exceed their powers in doing so. Accordingly, the panel's award must be confirmed.

D. Loss of Business Award

The district court also vacated the panel's award in favor of GSI for loss of business damages, finding that the transaction confirmation contracts contained an unambiguous limitation of damages provision which did not provide for loss of business damages. The district court held that the award failed to draw its essence

-12-

from unambiguous contract language found in Howard's general provisions documents. As we stated earlier, the general provisions document is not controlling as to the joint venture activities between the parties. The panel's award was based on the parties' joint venture relationship, and therefore the limitation on damages contractual language as cited by the district court did not control. The panel's award found that the only written documentation between Howard and GSI consisted of four letters of agreement detailing their joint venture transactions. These letters of agreement set forth the terms of joint venture transactions between GSI/Howard and the third-party business, i.e. ProGas, Minnegasco, and Union Gas. These letters stated in part, "GSI and Howard Avista agree to be jointly and severally liable for the obligations of GSI." The letters did not contain any contractual language regarding limitation of liability.

The panel concluded that Howard's actions in the course of the parties' joint ventures caused GSI loss of viability and credibility as a natural gas broker with its preexisting and ongoing customers. The panel cited specific instances: Howard's failure to agree to let the Farwell gas move to Dawn in November, 1998 to satisfy the Minnegasco Peaking Contract;[6] the increased security demands Howard made on GSI for the purchase of gas after November 1, 1998; and Howard's curtailment of gas deliveries to GSI in January and March, 1999, which the panel found to result in the loss of GSI's business viability. The panel's award indicated that it based its

---

[6]Two disputes between GSI and Howard arose out of a joint venture involving ProGas. First, the parties disagreed as to the delivery point, which was significant to the value of the gas. Evidence presented to the arbitration panel indicated that gas located at Dawn, Ontario, is more valuable than gas located at Farwell, Michigan, due to Dawn's superior pipeline access to greater markets, and its inherently lower transportation costs. Second, the parties disagreed on the price for the natural gas. These disputes put the joint venture at risk, and set off a series of conflicts between the parties.

evaluation on the entirety of the evidence, and found that the loss of GSI's business viability was a natural and foreseeable consequence of Howard's activities.

"We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts."  Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir. 1986).  In the absence of unambiguous contractual language, the arbitration panel considered the entirety of the evidence in making its determination and award.  Because we find that the panel's award was not irrational, nor did the panel exceed their authority, the panel's arbitration award must be confirmed.

E.  Attorneys' Fees, Costs and Interest

Finally, GSI sought and was awarded attorneys' fees under the Minnesota Consumer Fraud Act.  The district court vacated the panel's award for attorneys' fees, costs and prejudgment interest, finding that the award manifested a disregard of applicable Minnesota law, and failed to make a final determination of the issues.

A district court has the authority to vacate a panel's award when it "evidences a manifest disregard for the law."  Missouri River Servs., Inc. v. Omaha Tribe of Nebraska, 267 F.3d 848, 854 (8th Cir. 2001).  An arbitration decision evidences a manifest disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it.  Hoffman, 236 F.3d at 462.

The panel's award of attorneys' fees is troubling.  The panel majority states, "Howard's Reply Brief presented the panel with a decision of the Minnesota Supreme Court holding that the Consumer Fraud Act does not apply to GSI's dispute with

Howard."[7]  The Minnesota Consumer Fraud Act permits private parties to recover attorneys' fees for violations of Minn. Stat. § 325F.69.  We agree with the arbitration panel dissent which states: "As a matter of law, the transactions between the parties are not consumer transactions at all.  Rather they are transactions between sophisticated gas traders in the wholesale, commercial gas market."

Despite acknowledging the rule as set forth by the Minnesota Supreme Court in Ly which precludes a cause of action under the Consumer Fraud Act by a commercial trader, the panel majority ultimately awarded GSI attorneys' fees.  This ruling ignores the relevant law.  Where an arbitration panel cites relevant law, then proceeds to ignore it, it is said to evidence a manifest disregard for the law.  Hoffman, 236 F.3d at 462 (citing Stroh, 783 F.2d at 749-50).  We find that the award evidenced a manifest disregard for Minnesota law, and therefore affirm the district court's decision to vacate the award of attorneys' fees.

We also agree with the district court's analysis regarding prejudgment interest.  A court can vacate an arbitrator's award where the arbitrators fail to make a "mutual, final, and definite award upon the subject matter submitted."  9 U.S.C. § 10(a)(4).  The arbitrator must "resolve all issues submitted to the arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award."  Dighello v. Busconi, 673 F. Supp. 85, 90 (D. Conn. 1987).

Here, the panel's award indicates that the panel did not fully decide the issue of prejudgment interest:

---

[7]In Ly v. Nystrom, 615 N.W.2d 302, 314 (Min. 2000), the Minnesota Supreme Court held that claims for attorneys' fees under the Minnesota Consumer Fraud Act are not available for private causes of action which do not benefit the public.

The panel further recognizes that the entitlement to an amount of prejudgment interest . . . may also be specifically governed by Minnesota or federal statute, court rule, and/or case law. The panel has not sought to make purely legal rulings with respect to those two (2) issues. The panel emphasizes that, should a Minnesota or federal court of competent jurisdiction determine that GSI is not legally entitled to Attorneys Fees and Prejudgment Interest, such a determination should not and does not affect the other findings, conclusions, or awards made by the panel herein.

Arbitrator's Award And Dissent at 27-28.

By expressly leaving this award open for judicial determination, the panel failed to make a final determination. Accordingly, we affirm the district court's decision to vacate the award of prejudgment interest.

The judgment of the district court is REVERSED and the arbitration panel's decision CONFIRMED as to the awards for loss of business damages and general trading account ("Sale Price in Contract"). The district court is AFFIRMED as to the attorneys' fees, costs and interest award.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-16-