**Danny ROE and Rita Roe Plaintiffs**

v.

**CARGILL, INC. Defendant**

No. 02–6020.

United States District Court, W.D. Arkansas, Hot Springs Division.

April 20, 2004.

W. David Carter, Todd Turner, for Plaintiffs.

Kevin A. Crass, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Upon motion of Plaintiffs, we issued an order on December 1, 2003 reopening this case after the resolution of arbitration proceedings. Currently before the Court is Plaintiffs' Motion for Entry of Judgment and Confirmation of Award (Doc. 17) and Plaintiffs' Motion for Attorneys' Fees, Costs and Interest (Doc. 26.) Defendant has filed an Application and Motion to

Vacate the Award (Doc. 18.) For the following reasons, Plaintiffs' Motion for Entry and Confirmation (Doc. 17) is GRANTED, Plaintiffs' Motion for Attorneys' Fees (Doc. 26) is DENIED, and Defendant's Motion to Vacate (Doc. 18) is DENIED.

## I. BACKGROUND

The following facts are not disputed.

1. In 1994, Plaintiffs began discussions with Defendant about becoming pork producers. In order to become "Pork I" producers for Defendant, Plaintiffs were required to build facilities according to Defendant's specifications.

2. After orally agreeing to produce hogs for Defendant, Plaintiffs obtained a significant mortgage and built the required facilities. According to the agreement, Plaintiffs were to receive sows from Defendant, to breed the sows and to raise the offspring until they were weaned. In 1995, Plaintiffs entered into a three-year written contract to breed hogs for the Defendants. In 1998, Plaintiffs entered into a second three-year contract to breed hogs with Defendant. Both contracts provided for mandatory arbitration of all disputes arising out of the relationship.

3. The contracts provided that Defendant was to provide safe and productive animals to Plaintiffs for their hog farming operation. Plaintiff was obligated to accept and breed sows delivered by Defendant.

4. In 1996, Plaintiffs received hogs from Defendant which had *leptospira interrogans* or leptospirosis, which causes abortions in animals and causes other problems in their offspring. It also can be contracted by humans, causing health problems. After the leptospirosis problem, Defendant provided Plaintiff with sows that were infected with Porcine Reproductive and Respiratory Syndrome (hereinafter PRRS) virus. PRRS causes a weakened immune system in animals, which may result in fatal infections.

5. Plaintiff Danny Roe contracted chronic leptospirosis, which often causes liver and kidney damage. As a result, he experienced medical expenses, pain and injuries. As a result of the PRRS virus and leptospirosis in their hogs, Plaintiffs experienced a lost earning ability because they were unable to produce and deliver live and healthy offspring.

6. In 2001, Plaintiffs discontinued breeding sows on their farm and refused sows shipped by Defendant to their farm for breeding.

7. Following Plaintiffs' refusal to breed sows or to accept new sows, the parties agreed to terminate the contract. The contract was terminated on May 1, 2001, in a letter written by the president of Defendant's pork operation; however, the parties never agreed to the terms of their separation. In December of 2001, Plaintiffs filed suit against Defendant in state court asserting breach of contract claims regarding Defendant's breach in supplying hogs to Plaintiffs and the Defendant's failure to exercise good faith in dealings with Plaintiffs. Plaintiffs also asserted negligence, fraud and estoppel claims.

8. In February of 2002, the action was removed to this Court.

9. During the pendency of the lawsuit, Plaintiffs attempted to sell their farm. Due to the hog farming facilities Plaintiffs had constructed, their farm had no commercial or farming

use other than as a swine multiplier facility.

10. In early 2002, Plaintiffs found a buyer for their farm, but the buyer's financing was contingent upon a letter of intent from Defendant to enter into a pork production contract. In March of 2002, Defendant refused to issue a letter of intent.

11. On May 1, this Court ordered arbitration and administratively terminated the suit pending resolution of the arbitration proceeding.

12. The dispute went to arbitration and the Arbitrator issued an interim award on August 8, 2003, making the following findings:

a. Plaintiffs acts in refusing to breed existing sows on his farm and refusing to accept new sows shipped to him by Defendant constituted a breach of the parties' contract.

b. Defendant agreed to an early termination of the contract rather than pursing its remedies for the breach.

c. The Arbitrator rejected Plaintiffs' breach of contract claims relating to Defendant supplying them with pigs and paying pigs produced by Plaintiffs. He found that "having waived or excused Roe's breach and terminated the contract, Cargill had a good faith obligation to allow Roe the reasonable *opportunity to mitigate damages*."

d. Plaintiffs' attempt to sell their farm was an attempt to mitigate damages. Plaintiffs could reasonably expect good faith performance from Defendant during the time that it would reasonably take them to pay their mortgage debt, assuming they fulfilled their contractual duties.

e. When the contract was terminated by mutual agreement before Plaintiffs paid their mortgage debt, it was reasonably foreseeable by Defendant that Plaintiff would have to sell their farm to mitigate their damages. When Defendant refused to issue a letter of intent to Plaintiffs' potential buyer, it did not act in good faith. (Doc. 17, Ex. A.)

13. In the Interim Award, the Arbitrator awarded Plaintiffs payment for past medical and diagnostic treatments related to Danny Roe's leptospirosis symptoms but awarded no future payments. *See id.* He also found that Plaintiffs were entitled to an award for Defendant's breach of its duty of good faith and fair dealing in refusing to issue a letter of intent to Plaintiffs' buyer. The Arbitrator stated that "the award to the Roes is limited to Cargill's breach of its duty to allow Roe to mitigate his damages after termination of the contract." *id.* He reopened the arbitration hearing for the limited purpose of taking evidence on remedial elements to determine an award for Defendant's "breach of duty to allow Roe to mitigate his damages." *id.*

14. The Arbitrator made a Final Award on October 26, 2003, with additional findings to include:

a. The evidence supported the conclusion that the buyer for Plaintiffs' farm, Willis O'Connell, was a qualified buyer.

b. Defendant did not issue O'Connell a *letter of intent which he needed to obtain financing* because it did not want to finance Plaintiffs' litigation.

c. In refusing to issue the letter of intent, Defendant "frustrated Roe's *duty and opportunity to mitigate his* damages."

d. "A defendant cannot frustrate the exercise [of a plaintiff's] duty to mitigate damages." (Doc. 17, Ex. B.)

15. The Arbitrator concluded that the proper remedy was to put "the Roes in the position they would have been in had Cargill acted in good faith when the Roes had an opportunity to sell the property but without creating a windfall at Cargill's expense." *Id.*

16. In addition to the previous award for past medical expenses, the Arbitrator made a finding that "Cargill shall purchase the Roe farm..." and that Cargill could either purchase the farm with a 40 acre tract of land for $580,000, or Cargill could purchase the farm with a 77 acre tract of land for $650,000. *Id.* Cargill was to communicate its election in writing to Plaintiffs' attorney within 30 days of its receipt of the Award. *Id.*

## II. DISCUSSION

Plaintiffs move for entry and confirmation of the arbitration award. Defendant seeks to vacate the award on the basis that the award shows a manifest disregard for the law and is irrational and that the Arbitrator is guilty of misconduct in failing to reopen the hearing on the issue of Defendant's duty of good faith and fair dealing and in failing to admit material evidence. Following Defendant's application and motion to vacate the award, Plaintiff filed a motion asking for attorney's fees for defending against the motion to vacate.

### a. Arbitration Award

A district court's review of an arbitration award is extremely limited. *See Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 532 U.S. 1015, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). The underlying award is entitled to an "extraordinary level of deference." *Schoch v. InfoUSA, Inc.,* 341 F.3d 785, 788 (8th Cir. 2003) (internal citations omitted). According to this narrow and deferential standard, a district court may not set aside an arbitration award even if the court may "have interpreted the agreement differently or because the arbitrator erred in interpreting the law or in determining the facts." *Hoffman v. Cargill, Inc.,* 236 F.3d 458, 462 (8th Cir.2001). So long as the arbitrator is even arguably construing the underlying contract and acting within his scope of authority, the award should be confirmed. *Schoch,* 341 F.3d at 788.

An arbitrator's broad authority is constrained by the Federal Arbitration Act (herein FAA). *See* 9 U.S.C. § 1 et seq. A district court may vacate an award if it evidences a manifest disregard for the law or if it is completely irrational. *See* 9 U.S.C. § 10(a)(4), *Hoffman,* 236 F.3d at 461. An award may also be vacated if the arbitrator is guilty of misconduct. *See* 9 U.S.C. § 10(a)(3).

Before considering the substantive issues raised by Defendant's motion to vacate the arbitration award, the Court addresses Plaintiffs' contentions that Defendant is precluded from moving to vacate the award for procedural reasons. Plaintiffs claim that Defendant failed to comply with the American Arbitration Associations's (hereinafter AAA) rules by not moving to reopen the hearing before moving to vacate the award and failed to provide this Court with an adequate record of the arbitration proceedings. The AAA rules do not require Defendant to seek reopening of the arbitration hearing as a prerequisite to their present motion to vacate the award in this court. *See* (American Arbitration Ass'n Rule 36.) Nor does the AAA require Defendant to provide this Court with a transcript of the full record of the arbitration proceedings. Accordingly,

Plaintiffs' claims of procedural deficiencies are without merit and the Court moves on to consider the substantive issues raised in Defendant's motion to vacate the award.

■ Defendant first contends that the Arbitrator manifestly disregarded the law in making the award. An award manifests a disregard for the law where an arbitrator clearly identifies the governing law and then ignores it. *See Hoffman*, 236 F.3d at 461. The Arbitrator identified the governing law as "[u]nder Arkansas law, parties to a contract have a duty to act in good faith." (Doc. 7, Ex. A.) Defendant contends that the Arbitrator ignored this principle in awarding Plaintiffs damages for Defendant's failure to act in good faith when it refused to issue Plaintiffs' buyer a letter of intent because the parties' contract terminated prior to Defendant's refusal and no duty of good faith and fair dealing exists outside of a contract. In the alternative, Defendant claims that, even if a good faith duty did exist, Defendant did not breach it because, under their contract, Defendant had a right to refuse to issue a letter of intent.

■ Under the narrow vacatur standards listed above, the arbitration award does not evidence a manifest disregard for the law. *See Schoch*, 341 F.3d at 790 (finding that arbitrator's broad interpretation of the employment relationship was not manifest disregard for the law). The Arbitrator broadly interpreted the duty of good faith and fair dealing in contracts when he fashioned an equitable remedy on the ground that Defendant's refusal to issue a letter of intent was not in good faith because it was based on a goal of not funding Plaintiffs' litigation. *See Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F.Supp. 901, 905 (S.D.N.Y.1982) (*affd.* 689 F.2d 301 (2nd Cir.1982)) ("[a]n arbitration panel may grant equitable relief that a Court could not.") His conclusion does not evidence a manifest disregard for the law,

because he applied the good faith standard which he identified. *See id.; see also,* Restatement (Second) of Contracts § 205, Comment e (the duty of good faith and fair dealing extends to settlement and litigation of a contract). The Arbitrator's findings that Plaintiffs breached the contract but then awarding Plaintiff an equitable remedy on the grounds that Defendant breached its duty of good faith and fair dealing does not change this conclusion. This court may not set aside an award "simply because...the arbitrator erred in interpreting the law." *Stroh Container Co. v. Delphi Indus.*, 783 F.2d 743, 749–50 (8th Cir.1986).

■ Defendant next asserts that the award is irrational. An award is irrational when it fails to draw its essence from the agreement. *See Hoffman*, 236 F.3d at 461. An award is drawn from the essence of the agreement as long as it is derived from the agreement, viewed in light of the agreement's language, context, and any other indicia of the parties' intention. *See Boise Cascade Corp. v. Paper–Allied Indus.*, 309 F.3d 1075, 1080–81 (8th Cir.2002).

■ Because "contracts often lack explicit provisions for specific kinds of remedies, it falls to the arbitrator to devise one." *Amalgamated Transit Union v. Jefferson Partners*, 229 F.3d 1198, 1201 (8th Cir.2000). The parties' agreement did not restrict the arbitrator to remedies available in a court of law. Rather, the agreement adopts the rules of the AAA which authorize the arbitrator to "grant any relief which the arbitrator deems just and equitable." (Doc. 17, Ex. A); (American Arbitration Ass'n Rule 43.) Defendant contends that the arbitrator exceeded the bounds of the agreement in making his award because the parties' contract had terminated before Defendant's refusal to issue the intent letter and because the

contract did not limit Defendant's discretion in issuing letter of intent. Even if this is true, the fact remains that it was the Arbitrator's job to fashion a remedy. *See Amalgamated Transit Union,* 229 F.3d at 1201. The courts must defer to his choice of a remedy within very broad limits. *See, id; see also, Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, Dist. 271,* 706 F.2d 228, 230–31 (8th Cir.1983) (en banc) ("In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority.")

▮ Finally, Defendant contends that this Court should vacate the award because the Arbitrator is guilty of misconduct in refusing to hear evidence pertinent and material to the case. The arbitrator has procedural discretion in the administration of the arbitration hearing. *See Delta Mine Holding Co. v. AFC Coal Properties, Inc.,* 280 F.3d 815, 822 (8th Cir.2001). For a court to vacate an award on the basis of misconduct in refusing to allow evidence, there must be clear and convincing evidence that a party was prejudiced by not being able to fully present its case. *See* 9 U.S.C. § 10(a)(3).

After the first hearing, the Arbitrator issued an interim award finding that Plaintiffs were entitled to a remedy. He reopened the hearing for the limited purpose of taking evidence on remedial elements [1] regarding the proper remedy for Plaintiffs. Defendant contends that it was not allowed to fully present its case because the Arbi-

trator refused to reopen the hearing on the issue of breach of the duty of good faith and fair dealing and to admit evidence relevant to Defendant's decision not to issue a letter of intent to Plaintiffs' buyer. In arbitration, the arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed to be irrelevant. (American Arbitration Ass'n Rule 31.) The Defendant has not shown that it did not have the opportunity to present its case in the first hearing. Defendant presented evidence that its decision to deny the letter of intent was a "business decision," and the Arbitrator rejected this explanation. (Doc. 17, Ex. A.) Defendant did not have an opportunity to augment its presentation as it wanted to in the second hearing, but this does not show misconduct on the part of the Arbitrator. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (arbitration is not a perfect system of justice, nor it is designed to be).

Under the narrow standard of review for an arbitration award, Defendant has not shown that the award was irrational or evidenced a manifest disregard for the law or that the Arbitrator was guilty of misconduct. Accordingly, Defendant's motion is DENIED and Plaintiffs' motion is GRANTED.

### b. Attorney's Fees

▮ Plaintiffs filed a motion seeking an award of their attorney's fees, costs and interest incurred in responding to Defendant's motion to vacate the arbitration award. Attorney's fees are ordinarily not

---

1. These elements are:
   (1) How are the Roes to be placed in the position they would have been in, had the O'Connell sale been consummated?
   (2) Is Cargill entitled to a lien against the property to prevent a windfall to the Roes in the event that they satisfy the mortgage *and* sell the property?

   (3) How should the waste pond be remediated, at whose expense, and under what circumstances?
   (4) Are the Roes entitled to an attorney's fee under the contract or under Arkansas law and what is the reasonable fee?

available to the prevailing party in federal litigation and statutes to enforce arbitration do not authorize attorney's fees. *See Lackawanna Leather Co.,* 706 F.2d 228, 232 (8th Cir.1983). A court may award attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Int'l United v. United Farm Tools, Inc.,* 762 F.2d 76, 77 (8th Cir.1985).

■ Plaintiffs contend that Defendant's motion to vacate the award is an unjust refusal to abide by the award and constitutes bad faith. Defendant has acted within its statutory rights by moving to vacate the Arbitrator's award. 9 U.S.C. § 10. Though Plaintiffs may disagree with Defendant's reasoning in its motion, "it cannot be seriously [contended] that Defendant's motion to vacate was frivolous, in bad faith, or vexatious." *In Matter of the Application of the Children's Hosp. of Buffalo,* 582 F.Supp. 1147 (W.D.N.Y.1984). Plaintiffs' proffered evidence that Defendant sought to confirm arbitration awards in other cases in which it was involved is irrelevant here. Accordingly, Plaintiffs' motion is DENIED.

## III. CONCLUSION

Defendant has not shown that the award was irrational or evidenced a manifest disregard for the law or that the Arbitrator was guilty of misconduct. Plaintiffs have not shown that Defendant acted wantonly, vexatiously, or in bad faith.

Accordingly, Defendant's Application and Motion to Vacate the Arbitration Award (Doc 18) is DENIED and Plaintiffs' Motion for Entry of Judgment and Confirmation of Award (Doc. 17) is GRANTED. Plaintiffs' Motion for Attorney's Fees, Costs and Interest (Doc. 26) is DENIED.