**JOHNSON CONTROLS, INCORPORATED, SYSTEMS & SERVICES DIVISION, and Pneumatic Control Systems Council, Plaintiffs–Appellees,**

v.

**UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, and Its Local 353, Defendants–Appellants.**

No. 94–1278.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1994.

Decided Nov. 15, 1994.

Douglas A. Darch (argued), Theodore C. Stamatakos, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiffs-appellees.

Brian A. Powers, Sally M. Tedrow (argued), O'Donoghue & O'Donoghue, Washington, DC, for defendants-appellants.

Before LAY,* EASTERBROOK and RIPPLE, Circuit Judges.

LAY, Circuit Judge.

Johnson Controls, Inc. and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("the Union") dispute whether Johnson's assignment of certain preventive maintenance work to nonbargaining unit employees violates their collective bargaining agreement. On September 26, 1989, the Union initiated a grievance against Johnson alleging that Johnson was using nonbargaining unit personnel to perform maintenance work on mechanical equipment. The grievance could not be resolved and the dispute was submitted to

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

arbitration. The arbitrator found in favor of the Union, concluding the agreement covered the maintenance work. The district court vacated the arbitrator's award and granted summary judgment in favor of Johnson, concluding the arbitrator went beyond the terms of the agreement. The Union now appeals. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we reverse.

## Background

Johnson Controls, Inc. is a member of the Pneumatic Control Systems Council ("the PCSC"). The PCSC is responsible for negotiating bargaining agreements with the Union on behalf of its members. The Union is a qualified labor organization under 29 U.S.C. §§ 152(5) and 185(a), and represents employees of PCSC members for purposes of collective bargaining. The Union's Local 353 represents various employees at Johnson's Peoria location. The Union and PCSC entered into the National Pneumatic Control Systems Agreement ("the Agreement"), at issue in this case, on March 31, 1989.

The Agreement mandates arbitration for certain grievances arising between the signing parties. Paragraph 53 of the Agreement defines the scope of the arbitrator's authority as follows:

> The authority of the ... impartial arbitrator shall be limited to the construction and enforcement of the express language of this Agreement as applied to the specific grievance or issue stated in the request for arbitration. The ... impartial arbitrator shall have no authority or jurisdiction, directly or indirectly, to add to, subtract from, change, modify or supplement any of the specific provisions of this Agreement.

In July, 1989, a different local chapter of the Union filed a grievance in St. Louis against Johnson for the assignment of some preventive maintenance work to nonbargaining unit employees in breach of a provision of Paragraph 13(1) of the Agreement. Paragraph 13(1) provides in pertinent part:

> This Agreement covers the rates of pay, hours and working conditions of journeymen and apprentices engaged in the installation, service, and *maintenance of all plumbing and/or pipe fitting systems, including pneumatic controls and mechanical equipment* and component parts....

(emphasis added). In October 1990, the arbitrator in that dispute found that the parties could not "agree on what was decided between them" as to whether these workers were covered by Paragraph 13(1). The first arbitrator concluded that Paragraph 13(1) did not cover preventive maintenance work and therefore held for Johnson.[1]

On September 26, 1989, Local 353 filed this grievance against Johnson advancing the same claim; namely, that Paragraph 13(1) provides for preventive maintenance work on mechanical equipment to be performed by collective bargaining personnel. After determining the St. Louis Arbitration did not preclude a determination on the merits, the arbitrator[2] issued an award for the Union, holding Paragraph 13(1) includes preventive maintenance work, and thus such work is reserved for bargaining personnel. The arbitrator drew this conclusion after undergoing a detailed analysis of the relationship and bargaining history of the parties. Johnson filed suit in district court to vacate the arbitrator's award.

The District Court for the Central District of Illinois[3] vacated the arbitrator's award and granted summary judgment for Johnson. Although the court did not question the arbitrator's factual findings, it took issue with the arbitrator's reasoning. In discussing why he reached the opposite result of the St. Louis proceeding, the arbitrator stated:

> [T]here was a recognition by the [PCSC] and the Union that a resolution of the issue had not necessarily been resolved, that it had been fudged for whatever their respective reasons and that there was almost an understanding that the matter would have to be disposed of in arbitration as evidenced by the remark made by Tar-

---

1. The Union filed suit to have this decision vacated. The District Court for the Eastern District of Missouri refused to vacate this decision, and granted summary judgment in favor of Johnson.

2. Arbitrator George Edward Larney.

3. The Honorable Michael M. Mihm, Chief Judge.

kowski to Moore at the last bargaining session that if the Union felt the new paragraph [13(1)] covered the work of [preventive maintenance inspectors], the Union could file a grievance. Based on this remark and the uncertainty as to the meaning of what had been agreed to, the Arbitrator is of the view that the instant case, like the St. Louis case before Erbs, represents an exception to the "maxim" [that a party should be barred from securing through arbitration what it was unable to secure through negotiations].

The court interpreted this statement to mean that the arbitrator had found no "meeting of the minds" between the parties with regard to the meaning of Paragraph 13(1). The court went on to conclude that because the parties reached no agreement, further arbitration on this issue was beyond the arbitrator's authority. Thus, the court vacated the arbitrator's award because he had drawn his interpretation of Paragraph 13(1) from outside the Agreement. The Union now appeals the court's grant of summary judgment, and its denial of the Union's counterclaim for enforcement of the arbitration award, attorneys' fees, and prejudgment interest.

*Discussion*

I.

◼ Judicial review of arbitration awards is extremely limited. *Polk Bros. v. Chicago Truck Drivers Union*, 973 F.2d 593, 596 (7th Cir.1992); *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986); *see United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As long as the arbitrator's award is based on his interpretation of the contract, a court cannot disturb it. *See, e.g., Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362; *Ethyl Corp.*, 768 F.2d at 184. Although an arbitrator exceeds his authority if his award does not "draw its essence from the collective bargaining agreement," we are hesitant to upset the award on such grounds. *Polk Bros.*, 973 F.2d at 597 (citing *Ethyl Corp.*, 768 F.2d at 185). Thus, we resolve reasonable doubts concerning the arbitrator's analysis in favor of enforcing the award. *See id.* at 597; *Ethyl Corp.*, 768 F.2d at 185, 187.

With this deferential standard in mind, we must respectfully disagree with the district court's conclusion in this case. The arbitrator devoted his analysis to uncovering the meaning of Paragraph 13(1). He discussed in detail the twenty-year history of collective bargaining between the PCSC and the Union, the modifications to Paragraph 13(1) in successive agreements, and the parties' relative positions on the scope of this section during the various negotiating sessions. From this survey of the surrounding facts, the arbitrator found the present version of Paragraph 13(1) includes preventive maintenance work. He concluded his discussion of the parties' bargaining history as follows:

Prior to 1976, there was no distinction made between maintenance work attendant to repair of equipment and replacement of parts and, preventive maintenance, even though ... there was a recognition historically that preventive maintenance was different from other maintenance work. It was not until the 1976 Agreement that the [PCSC] and the Union bifurcated the work of maintenance, accomplishing this by the addition of the "incidental to" language which formally separated preventive maintenance from maintenance attendant to repair of equipment and replacement of parts. When in 1989 the [PCSC] and the Union agreed to eliminate the "incidental to" language, it effectively agreed at the same time to eliminate the formal distinction between preventive maintenance work and other maintenance work. In reading the clause as it presently exists in the 1989 Agreement ... there is absolutely no doubt that absent any reference to preventive maintenance work or an enumerated list of tasks/duties constituting preventive maintenance work, that the term maintenance must be construed as applying to all tasks/duties associated with maintenance work regardless of the range of complexity or simplicity of those tasks/duties.

◼ This analysis clearly illustrates the arbitrator was engaged in interpretation of

the contract. Faced with an ambiguous provision in the Agreement, the arbitrator considered the surrounding circumstances to determine its meaning. An arbitrator's award draws its essence from the collective bargaining agreement as long as it is derived from the agreement, "viewed in light of its language, its context, and any other indicia of the parties' intention...." *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Int'l Union, Local 7–1, Inc.*, 548 F.2d 1288, 1294 (7th Cir.) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). Moreover, the Agreement's arbitration clause provides for this type of contract construction.[4] Thus, the thrust of the arbitrator's analysis falls squarely within his authority to interpret the contract. *See Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362 (stating a court has no business second-guessing an arbitrator's construction of the collective bargaining agreement); *Colfax Envelope Corp. v. Local No. 458–3M, Chicago Graphic Communications Int'l Union*, 20 F.3d 750, 754 (7th Cir.1994) (indicating arbitrators are meant to resolve questions of interpretation when the meaning of a contract term is unclear).

▪ The possible inconsistency of one paragraph of the arbitrator's opinion does not justify vacating the arbitrator's award. As we stated in *Ethyl, supra*, "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence from the collective bargaining agreement....'" 768 F.2d at 185 (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361) (citations omitted) (emphasis in original). The arbitrator's opinion is dominated by a discussion of the meaning of express language of Paragraph 13(1). In addition, the Supreme Court has stressed that a "mere ambiguity in the opinion accompanying an

award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361; *see also Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991) (stating arbitrators' opinions need not be well written and should not be subjected to "beady-eyed scrutiny"). Thus, any confusion the arbitrator may have caused is insufficient to support the lower court's decision.

▪ We also reject the district court's conclusion that because the arbitrator found the parties came to no "meeting of the minds" concerning the scope of Paragraph 13(1), further arbitration on this issue was beyond his authority.[5] Assuming *arguendo* that the arbitrator actually concluded the parties reached no "meeting of the minds" on the meaning of Paragraph 13(1), such a finding does not prohibit the arbitrator from interpreting the provision. In *Colfax Envelope, supra*, we declared that contracting parties' disparate understandings of a particular provision of a collective bargaining agreement do not render the provision nonarbitrable. 20 F.3d at 754. We stated, "It is common for contracting parties to agree—that is, to *signify* agreement—to a term to which each party attaches a different meaning. It is just a gamble on a favorable interpretation by the authorized tribunal should a dispute arise." *Id.* (emphasis in original). We further clarified this principle: "When parties agree to a patently ambiguous term, they submit to have any dispute over it resolved by interpretation. That is what courts and arbitrators are *for* in contract cases—to resolve interpretive questions founded on ambiguity." *Id.* (emphasis in original). Only if the contract provision contains a "latent ambiguity," or, in other words, is the result of a mutual misunderstanding, is it subject to rescission and outside the arbitrator's interpretive authority. *Id.* Because Paragraph 13(1) clearly is not the product of a mutual misun-

---

4. The clause limits the arbitrator's authority to "construction and enforcement of the express language" of the Agreement. The arbitrator's analysis of the bargaining history of the parties to discern the meaning of the express language of Paragraph 13(1) falls squarely within this clause.

5. Our analysis is in agreement with the Union's argument that neither the first arbitrator nor Arbitrator Larney's opinion found there was no agreement. Neither party ever submitted this argument at either arbitration proceeding.

derstanding between PCSC and the Union, the district court's "meeting of the minds" analysis was erroneous.

Thus, we hold the district court improperly upset the arbitrator's award. We therefore reverse with directions to enforce the award.

## II.

█ The Union also argues the district court erred in denying its request for attorneys' fees and costs. Although we find in favor of the Union, this case presents at least a colorable question of law. We cannot conclude, therefore, that Johnson's arguments before the district court and on appeal were frivolous or in bad faith. Thus, we agree with the district court's denial of an award of fees and costs. *See, e.g., Chicago Newspaper Publishing Ass'n v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 398 (7th Cir.1987) (stating that while the court disagreed with the employer's argument, it would not award fees to the union because the employer did not exhibit bad faith in challenging the arbitration award).

## III.

For the foregoing reasons, the district court's grant of summary judgment in favor of Johnson is reversed with directions to enforce the arbitration award. The district court's denial of the Union's request for attorneys' fees, however, is affirmed.