# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1296

_____

| | | |
|---|---|---|
| Claude M. Schoch, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| InfoUSA, Inc.; American Business | * | |
| Information Marketing, Inc., | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: June 19, 2003

Filed: September 3, 2003

_____

Before BOWMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

     *Info*USA, Inc. and American Business Information Marketing, Inc. (collectively *info*USA) appeal from the district court's[1] order confirming an arbitration award in favor of Claude M. Schoch (Schoch) and entry of judgment in Schoch's favor. *Info*USA argues the award should be vacated because (1) the

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

arbitrator exceeded his contractual authority, and (2) the award is completely irrational and evidences a manifest disregard for the law.  We affirm.

## I.     BACKGROUND

In September 1996, *info*USA bought Schoch's business for $20,000,000 in cash and stock and entered into a three-year employment agreement with Schoch for an annual salary of $225,000.  *Info*USA also granted Schoch the option to purchase 360,000 shares of *info*USA stock (180,000 shares before intervening 2-for-1 stock split).  The options vested over a four-year period (90,000 shares annually in August of 1997, 1998, 1999, and 2000) and could "be exercised for up to three months after termination of employment or consulting relationship."  The employment agreement ended on September 9, 1999, and the parties did not renew the agreement.  At the time the employment agreement ended, the options to purchase 270,000 shares had vested, while the option for the remaining 90,000 shares would not vest until August 2000.  Even though the employment agreement had ended, Schoch did some work for *info*USA in October, November, and December 1999, but did not get paid for this work.  During this time, Schoch apparently attempted to get *info*USA to extend his agreement so he could work until the remaining 90,000 shares vested, but *info*USA refused.  In mid-December 1999, *info*USA's stock price rose significantly, and the market price exceeded the exercise price of Schoch's options.  On December 17, 1999, Schoch tried to exercise his options to purchase 360,000 shares.  *Info*USA refused his tender offer, claiming Schoch's employment agreement ended on September 9, 1999, which meant his three-month exercise period had ended on December 9, 1999.

In March 2000, Schoch sued *info*USA for breach of contract, reformation, and unjust enrichment.  In February 2001, Schoch and *info*USA agreed to arbitrate the dispute and the district court granted a stay pending arbitration.  The parties hired a retired state court trial judge to arbitrate the dispute.  After holding three days of hearings and reviewing post-hearing briefs, the arbitrator issued a nine-page opinion

containing his findings and conclusions. The arbitrator decided Schoch continued in an employment relationship until December 17, 1999, such that the options for 270,000 shares had not expired.[2] The arbitrator then decided Schoch's damages for not being allowed to exercise his options amounted to $1,632,000.

Schoch moved the district court to confirm the arbitration award, while *info*USA moved to vacate the award. *Info*USA maintained that a heightened standard of review applied because the arbitration agreement contained the following language: "The Arbitrator shall issue an award consisting of **findings of fact and conclusions of law**. . . . The Arbitrator's decision and award shall be **valid and binding**, judgment may be entered on such award, and such award shall be final as to the Parties, **as long as the Arbitrator has not exceeded his or her authority** (i.e., the award would be limited to disputes arising out of the [Complaint] . . . , and resolved **in accordance with applicable law**)." (emphasis added). Even if a heightened standard of review does not apply, *info*USA argued the arbitrator's award should be vacated because he exceeded his contractual authority and the award is completely irrational and evidences a manifest disregard for the law. Refusing to apply a heightened standard of review, the district court granted Schoch's motion to confirm the award and entered judgment for Schoch in the amount of $1,632,000.

## II.   DISCUSSION

### A.   Standard of Review

In reviewing the district court's order confirming the arbitrator's award, we accept the court's factual findings unless clearly erroneous, but decide questions of law de novo. Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, 309 F.3d 1075, 1080 (8th Cir. 2002). However, the underlying award itself is entitled

---

[2]The arbitrator also determined Schoch was not entitled to compensation for work performed from September through December 1999, and the option for the remaining 90,000 shares did not vest.

to "an extraordinary level of deference." Id. (citation omitted). We are simply "not authorized to reconsider the merits of an arbitral award, 'even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" Id. (citation omitted). We will confirm the arbitrator's award "even if we are convinced that the arbitrator committed serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" Id. (citation omitted).

Although an arbitrator has broad authority, the arbitrator is not wholly free from judicial review. Id. An arbitrator's award can be vacated for the reasons provided in the Federal Arbitration Act (FAA). See 9 U.S.C. § 10(a) (reasons include corruption, fraud, undue means, evident partiality, misconduct, or ultra vires acts). Relevant to this case, a district court may vacate an arbitrator's award when the arbitrator exceeds his powers. Id. § 10(a)(4). In addition to the statutory reasons for vacating arbitration awards, our court has recognized two "extremely narrow" judicially created standards for vacating an arbitration award. Hoffman v. Cargill, Inc., 236 F.3d 458, 461 (8th Cir. 2001). First, an arbitrator's award can be vacated if it is "completely irrational," meaning "it fails to draw its essence from the agreement." Boise Cascade, 309 F.3d at 1080. "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Id. (quoting Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen, 39 F.3d 821, 825 (7th Cir. 1994)). The second judicially created standard for vacating an arbitration award is when the award "evidence[s] a manifest disregard for the law." Id. (citation omitted). An arbitrator's award "manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." Id. (citation omitted).

In addition to the narrow FAA and judicially created standards for vacating arbitration awards, *info*USA asks us to recognize the right of parties to contract for

a heightened standard of review of an arbitrator's award. Indeed, *info*USA claims it and Schoch contracted for a heightened standard of review, requiring the district court, and our court, to review the arbitrator's award de novo.

We recognize the circuit courts are split on whether parties to arbitration agreements can expand the scope of judicial review of arbitration awards. Compare Bowen v. Amoco Pipeline Co., 254 F.3d 925, 937 (10th Cir. 2001) (holding "parties may not contract for expanded judicial review of arbitration awards"), and Chicago Typographical Union v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1505 (7th Cir. 1991) (noting parties cannot contract for judicial review of arbitration awards because "federal jurisdiction cannot be created by contract," but recognizing parties "can contract for an appellate arbitration panel to review the arbitrator's award"), with Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 293 (3d Cir. 2001) ("We now join with the great weight of authority and hold that parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own."), LaPine Tech. Corp. v. Kyocera Corp., 130 F.3d 884, 888 (9th Cir. 1997) (holding courts must honor arbitration agreements that indisputably contract for heightened judicial scrutiny of an arbitrator's award), and Gateway Tech., Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 997 (5th Cir. 1995) (parties can contract for heightened de novo review of arbitration awards).

Our court has specifically reserved resolving this issue until the circumstances require it. In UHC Management Co. v. Computer Science Corp., 148 F.3d 992, 997 (8th Cir. 1998), this court made known that contracting for a heightened standard of review is not "yet a foregone conclusion." Expressing grave skepticism, we also made the following statement: "It is not clear, however, that parties have any say in how a federal court will review an arbitration award when Congress has ordained a specific, self-limiting procedure for how such a review is to occur [under the FAA]. . . . Congress did not authorize *de novo* review of such an award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but

to confirm."[3]  Id.  However, we noted that, if parties could contract for heightened judicial review, "the parties' intent to do so must be clearly and unmistakably expressed."  Id. at 998.

UHC Management was decided in July 1998.  *Info*USA and Schoch entered into their binding arbitration agreement on June 8, 2001.  These sophisticated parties had fair warning they needed appropriate language to create heightened judicial review.  If *info*USA and Schoch intended to contract for heightened judicial scrutiny, as *info*USA claims they did, one would imagine they would express such an intent using crystal-clear language.  They did not.  Because the parties did not "clearly and unmistakably" express an intent to have the district court review de novo the arbitrator's award, we will not read such an intent into their agreement.  The district court correctly reviewed the arbitrator's award under the narrow FAA and judicially created standards.  We will now proceed to do the same.

---

[3]While we do not expressly adopt the Tenth Circuit's persuasive reasoning in Bowen, we again express skepticism as to whether parties can contract for heightened judicial review of arbitration awards, which would seemingly amend the FAA, crown arbitrators mini-district courts, force federal trial courts to sit as appellate courts, and completely transform the nature of arbitration and judicial review.  See Hoffman, 236 F.3d at 462 ("Arbitration is not a perfect system of justice, nor is it designed to be.  '[W]here arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication.'  Arbitration is designed primarily to avoid the complex, time-consuming and costly alternative of litigation.") (citations omitted); Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir. 1994) ("Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review.  It is a private system of justice offering benefits of reduced delay and expense.  A restrictive standard of review is necessary to preserve these benefits and to prevent arbitration from becoming a 'preliminary step to judicial resolution.'") (citations omitted).

**B.     No Reason to Vacate Arbitrator's Award**

Under the narrow FAA and judicially created vacatur standards enunciated above (as opposed to a rigorous de novo review), we agree with the district court that we have no reason to vacate the arbitrator's award in this case.  The arbitrator did not exceed his contractual authority, his award was not completely irrational, and he did not evidence a manifest disregard for the law.

The arbitrator reasonably complied with his contractual authority in issuing his award.  He conducted a three-day hearing and reviewed the parties' written briefs before he issued his nine-page award.  In his award, the arbitrator recognized and analyzed the appropriate issues to be resolved, as required by the arbitration agreement.  He complied with the agreement by issuing factual findings and legal conclusions.  After concluding the term "employment or consulting relationship" was broader than simply being an employee, the arbitrator then discussed how Schoch had continued performing work for *info*USA, at *info*USA's request, after the employment agreement ended.  Based on this finding, the arbitrator decided Schoch was in an employment relationship until December 17, 1999.  In determining Schoch's damages for *info*USA's failure to allow Schoch to exercise his options, the arbitrator stated valid legal principles.  After hearing live testimony, reviewing the evidence, and studying the parties' briefs, the arbitrator concluded Schoch would not have sold all 270,000 shares at a profit, but found no evidence Schoch would not have sold any shares at all.  The arbitrator judged the credibility of witnesses, including experts, in deciding Schoch would have sold all of the shares, but at different prices over a period of time.  The arbitrator then determined, with the "requisite reasonable certainty," Schoch's damages were $1,632,000.

Although *info*USA may disagree with the arbitrator's factual and legal conclusions, the arbitrator did not exceed his contractual authority.  Because the arbitrator attempted to comply with the parties' agreement, the award was not completely irrational, as it drew its essence from the agreement.

Finally, the award does not evidence a manifest disregard for the law. The arbitrator interpreted the contractual phrase "employment or consulting relationship" to be broader than being an employee under an employment agreement. After noting Schoch continued to work for *info*USA after the employment agreement ended, the arbitrator determined Schoch was in an employment relationship. The arbitrator specifically stated he determined damages with the "requisite reasonable certainty." Even if the arbitrator made legal errors, he did not completely ignore the law.

Although we may disagree with the arbitrator's factual findings or legal analysis, our limited review does not authorize us to substitute our judgment for that of an arbitrator hired by the parties. In UHC Management, we explained:

> We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts. Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner.

Id. (quoting Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir. 1986)).

*Info*USA complains it did not receive the benefit of its bargain. We disagree. *Info*USA did not bargain for the benefits and protections of our state or federal judicial systems. Instead, *info*USA chose to resolve its dispute quickly and efficiently through arbitration. *Info*USA got exactly what it bargained for.

## III.  CONCLUSION

Because we conclude the district court properly confirmed the arbitration award, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.