## Trombetta v. Raymond James
## Financial Services Inc.

C.P. of Allegheny County, no. GD04-015418.

*Kerin M. Kowach,* for petitioners.

*David C. Franceski Jr.* and *Megan P. Willoughby,* for respondents Raymond James Financial Services Inc., Raymond James & Associates Inc. and Lewis.

*Peter Gialames,* pro se.

*Jeffrey J. Leech,* for co-respondents.

WETTICK JR., *A.J.,* March 2, 2005—The subjects of this opinion and order of court are the petition of James Trombetta, Tara Trombetta Witover, and Julie Trombetta Gray for a rule to show cause why a de novo review of an arbitration award should not be granted or, in the alternative, why the arbitration award should not be vacated; and the amended cross-petition of Raymond James Financial Services Inc., Raymond James & Associates

Inc., and Edward Lewis (Financial Services), for a rule to show cause why the NASD arbitration award should not be confirmed as to all parties.

According to the Award/NASD dispute resolution that is the subject of this litigation (Trombetta pet. exhibit A), in the arbitration proceedings, the Trombettas raised causes of action for breach of fiduciary duty, fraud, misrepresentation, negligence, gross negligence, and failure to supervise in which they sought $2 million in compensatory damages and an additional $2 million in punitive damages. These causes of action related to the purchase and sale of various stocks, investments on margin and option trading. Financial Services denied the allegations and asserted claims against Dr. Neil M. Niren for contribution and indemnification. Dr. Niren denied the allegations made in the joinder statement of claim and raised a cause of action for abuse of process against Financial Services and a cause of action against Peter Gialames and Edward Lewis for contribution and indemnification.

In June 2004, the arbitration panel entered an award denying all claims, third-party claims, and counterclaims in their entirety. The Trombettas and Financial Services have timely filed the petition and amended cross-petition that are the subject of this litigation.

The issue that I address in this opinion and order of court is the scope of the standard of review that I should apply in determining whether to confirm, modify, or vacate the June 2004 arbitration award.

Under Pennsylvania state law, the grounds for vacating a common-law arbitration award are set forth in 42 Pa.C.S. §7341, which reads as follows:

"*Section 7341. Common-law arbitration*

"The award of an arbitrator in a nonjudicial arbitration which is not subject to subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award."

The grounds for vacating an award entered in statutory arbitration proceedings under Pennsylvania state law are set forth in 42 Pa.C.S. §7314 which reads as follows:

"*Section 7314. Vacating award by court*

"*(a) General rule.—*

"(1) On application of a party, the court shall vacate an award where:

"(i) the court would vacate the award under section 7341 (relating to common-law arbitration) if this subchapter were not applicable;

"(ii) there was evident partiality by an arbitrator appointed as a neutral, or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

"(iii) the arbitrators exceeded their powers;

"(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

"(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not ad-

versely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

"(2) The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

"*(b) Time limitation.*—An application under this section shall be made within 30 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud, misconduct or other improper means, it shall be made within 30 days after such grounds are known or should have been known to the applicant.

"*(c) Further hearing.*—If the court vacates the award on grounds other than stated in subsection (a)(l)(v), the court may order a rehearing before new arbitrators chosen as prescribed in the agreement to arbitrate. Absent a method prescribed in the agreement to arbitrate, the court shall choose new arbitrators in accordance with section 7305 (relating to appointment of arbitrators by court). If the award is vacated on grounds not affecting the competency of the arbitrators under subsection (a)(1)(i) through (iv), the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 7305. The time period within which the agreement requires the original award to be made is applicable to the rehearing and commences from the date of the court order directing a rehearing.

"*(d) Confirmation of award.*—If an application to vacate the award is denied and no application to modify or

correct the award is pending, the court shall confirm the award."

The grounds for vacating an arbitration award governed by the Federal Arbitration Act, at least in proceedings pending in the federal courts, are set forth in section 10(a) of the Act, 9 U.S.C. §10(a), which reads as follows:

"(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(1) where the award was procured by corruption, fraud, or undue means;

"(2) where there was evident partiality or corruption in the arbitrators, or either of them;

"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a)(1)-(4).

Federal case law also recognizes an additional ground for vacating an arbitration award governed by the Federal Arbitration Act: A manifest disregard for the law. In *GMS Group LLC v. Benderson,* 326 F.3d 75, 77-78 (2d Cir. 2003), the court summarized the case law as to what the manifest disregard test requires as follows:

"We have recently provided an extensive and comprehensive recapitulation of our case law in this area, *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 208-10, 212-14 and n.8, 217-18 (2d Cir. 2002), and, thus, we will not repeat it here. Briefly, however, and as a general matter, it is well established that, under the manifest disregard standard, it requires 'more than a mistake of law or a clear error in fact finding' to disturb an award. *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 (2d Cir. 2002). Nor is the failure of the arbitrators to understand the law, or to apply it appropriately, sufficient. See *78 *Standard Microsys.,* 103 F.3d at 12. 'Manifest disregard can be established only where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature.' *Goldman,* 306 F.3d at 1216. (internal quotation omitted)"

The Second Circuit also addressed the situation (which we have in this case) in which there is no written opinion explaining the award:

"Insofar as delineating at baseline what will withstand manifest disregard review, especially where there is no written opinion, we have stated ' "[i]f *a* ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." ' *Fahnestock & Co. v. Waltman,* 935 F.2d 512, 516 (2d Cir. 1991) (quoting *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir. 1972)) (emphasis added); see also, *Standard Microsys.,* 103 F.3d at 13; *Siegel,* 779 F.2d at 894. In other words, if 'any justification' can be gleaned from

the record, as the district court noted, the award must be confirmed. We have also stated 'we will confirm the award if we are able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law.' *Westerbeke,* 304 F.3d at 212 n.8; see *Standard Microsys.,* 103 F.3d at 13 ('If there is even a barely colorable justification for the outcome reached, the court must confirm the arbitration award.'). (internal quotation omitted) Thus, the district court's formulation is at least consistent with these statements." 326 F.3d at 78.

The Federal Arbitration Act does not establish an independent basis for federal jurisdiction. *Southland Corp. v. Keating,* 104 S.Ct. 852, 861 n.9 (1984). Consequently, where (as in the present case) there is no diversity of citizenship, petitions to enforce or vacate arbitration awards entered in arbitration proceedings governed by the Federal Arbitration Act must be filed in the state courts. The Pennsylvania appellate courts have never addressed the issue of whether the federal or the state standards of review govern a petition filed in the Pennsylvania state courts to enforce or vacate an arbitration award entered in an arbitration proceeding governed by the Federal Arbitration Act.[1]

However, the Trombettas contend that the standard of review is not governed by either federal or state statutory standards, but, instead, is governed by the follow-

---

1. Until the United States Supreme Court addresses this issue, it is for the state courts to decide whether to apply state legislation or section 10 of the FAA. State courts are divided. See Jill I. Gross, *Over-Preemption of State Vacatur Law: State Courts and the FAA,* 3 J. Am. Arb. 1 (2004).

ing provision in the standard form client agreement which the parties executed:

"We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my [the client's] loss of principal exceeds $100,000; or the arbitrators award punitive damages. *In each of the foregoing cases, a court having jurisdiction will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing.* (emphasis added)" Trombetta pet. exhibit B at 2, arbitration disclosures (c).

This contention raises three issues: (1) whether this provision in the client agreement governed the parties' relationship at the time plaintiffs' claims were submitted to arbitration; (2) the meaning of "de novo" review; and (3) whether the parties may impose this standard of review on Pennsylvania state courts.

As to the first issue, I find that the provision in the client agreement set forth in the previous page governed the relationship between the Trombettas and Financial Services. I reject Financial Services' contention that this provision was modified through a mailing (*Investment Briefings,* vol. 14, issue 4 (winter 2000)) from Raymond James to its account holders. Financial Services memorandum in opposition, exhibit H. On page five of the *Investment Briefings* is an article titled "Raymond James simplifies language on client account agreement." While the bottom portion of the article includes a new arbitration agreement that eliminates the provision for a de novo review, the first paragraph of the article states that Raymond James has recently simplified the arbitration

language contained in its client account agreement in an effort to make it easier for clients to understand. The heading and first paragraph are deliberately misleading because the amendment was not intended to, and did not, simplify language but, instead, changed the standard of review for arbitration awards by eliminating the provision for a de novo review. Thus, the article does not furnish adequate notice to the clients of Raymond James that the arbitration agreement described in the article substantially modified the prior agreement.

In addition, the second paragraph of the article states, "Because current clients will not be exposed to this new language unless they open another account with Raymond James, we wanted to take this opportunity to share this change with you." This language suggests that the so-called simplified arbitration language does not apply if a client does not open another account.

I reject Financial Services' argument that the Niren account, opened in May of 1999, is not governed by the language of the client agreement providing for a de novo review. The writings executed in connection with the Niren account incorporate the provisions of the client agreement, including the provision for a de novo review. Trombetta app., exhibit 5 at 1.[2]

I next address the second issue—what is meant by the provision that a court "will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing." I agree with the Trombettas that a de novo review means

---

2. The New Account form concludes: "By signing below, I acknowledge that I have received, read, understand, and agree to abide by all the terms and conditions set forth in the client agreement, incorporated herein by this reference."

that a judge of this court should not give any weight to the decision of the panel of arbitrators. Instead, the judge reviews the transcript, including exhibits, of the arbitration hearing and makes his or her own decision in the same fashion as if the judge were presiding over a non-jury trial where the record consisted of only deposition testimony and exhibits offered by the parties. The sole function of the arbitration proceedings, in other words, is to create a record that the common pleas court judge will use to decide the case.

While Financial Services disagrees with plaintiffs' description of the role of the court, it is not clear what it is proposing as an alternative. At oral argument,[3] neither party proposed a standard of review in which the trial court judge would review what the arbitrators did as if the trial court judge was an appellate court. Neither party proposed that the standard be whether under applicable law the evidence could support the arbitration award. If this is what the parties intended, the agreement would not have referred to a "de novo" review.

Financial Services argues that, as part of the de novo review, the court cannot enter its own award/verdict/judgment. The court must either deny the petition to vacate and grant the amended cross-petition to confirm the award (meaning that the court, following an independent review of the evidence, reached the same result as the arbitration panel) or remand the case to another arbitration panel if the court has not reached the same result as the arbitration panel. I am not construing the agreement in this fashion because it is inconsistent with the reasons why the parties sought arbitration: a prompt reso-

---

3. A court reporter was present at the oral argument.

lution of the matter. The resolution of arbitration claims frequently does not involve either a ruling giving the claimant everything the claimant sought, or a ruling giving the claimant nothing. In the present case, a possible resolution of the dispute would be an award to the Trombettas of some damages that are far less than the amount which they sought. Thus, for example, if I conducted a de novo review and concluded that the Trombettas should receive damages of $175,000, Financial Services proposes that I would vacate the arbitration award and remand for further NASD proceedings. If the next panel of arbitrators awarded $219,000 to the Trombettas at a second arbitration proceeding (which would apparently involve a new hearing), a judge reviewing the second appeal would vacate the arbitration award and order a remand if he or she concluded that $371,000 should have been awarded.

The third issue that I now address is whether the Pennsylvania courts will enforce the provisions of an arbitration agreement that require a common pleas court judge to decide each of the claims and defenses raised by the parties to an arbitration proceeding by conducting a de novo review of the arbitration proceedings.

In the present case, the record consists of a transcript of more than 2,400 pages and 140 exhibits (not counting sub-parts).

A de novo review requires the trial court judge, through a review of the record, to become as familiar with all aspects of each claim and each defense as if he or she were a trial judge deciding the parties' claims in a non-jury trial. This is far different from the role of a common pleas court judge applying statutory standards for vacat-

ing an arbitration award. In this latter situation, the few grounds that a court may consider usually involve the review of limited portions of the record.

The Pennsylvania appellate courts have never addressed the issue of whether courts, when considering whether to confirm or vacate an arbitration award, will enforce a provision in an arbitration agreement which raises the level of judicial review beyond that available under applicable legislation. Most state courts that have considered this issue have ruled that the parties may not contractually expand the scope of judicial review of arbitration awards.

*John T. Jones Construction Co. v. City of Grand Forks,* 665 N.W.2d 698 (N.D. 2003), appears to be the most recent appellate state court opinion that has addressed this issue. The parties' agreement provided for a de novo review of issues of law.[4] The arbitrator ruled against the contractor who was seeking additional compensation. The contractor appealed the ruling, claiming that the arbitrator erred as a matter of law in ruling that it did not provide sufficient evidence of a differing site condition. The city cross-appealed, claiming that the arbitrator erred by not awarding attorney's fees and other expenses.

Both parties contended that the court should apply a de novo standard of review for issues of law. The North Dakota Supreme Court rejected this contention, stating that the North Dakota Arbitration Act provided the sole means for securing judicial review of an arbitration award in the courts of that state. Thus, a request to vacate an arbitration award is governed by the "completely irra-

---

4. The arbitration agreement also provided for a clearly erroneous standard of review for issues of fact. *Id.* at 700.

tional standard of review" provided for under North Dakota's Arbitration Act.

In reaching this result, the North Dakota Supreme Court reviewed, and followed, the case law of other state courts:

"State courts 'have generally held that the parties may not provide in their agreement for court involvement not authorized by the particular state's arbitration act.' 21 R. Lord, *Williston on Contracts* §57:130 at p. 638 (4th ed. 2001). For example, in *Chicago SouthShore and S. Bend R.R. v. Northern Indiana Commuter Transp. Dist.,* 289 Ill.App.3d 533, 224 Ill.Dec. 595, 682 N.E.2d 156, 159 (1997), *reversed on other grounds,* 184 Ill.2d 151, 234 Ill.Dec. 395, 703 N.E.2d 7 (1998), the court, interpreting the Illinois version of the Uniform Arbitration Act, stated:

"Subject matter jurisdiction gives the right to hear and determine causes. The subject matter jurisdiction of the trial court to review an arbitration award is limited and circumscribed by statute. The parties may not, by agreement or otherwise, expand that limited jurisdiction. Judicial review is limited because the parties have chosen the forum and must therefore be content with the informalities and possible eccentricities of their choice.

"(citations omitted) In *Brucker v. McKinlay Transp. Inc.,* 454 Mich. 8, 557 N.W.2d 536, 540 (1997), the court, construing the Michigan version of the Uniform Arbitration Act, said:

"In locating an alternative means of dispute resolution, the parties are generally free to craft whatever method they choose. All sorts of private conciliation, mediation, and arbitration devices are available. What

parties are *not* able to do, however, is reach a private agreement that dictates a role for *public* institutions.

"See also, *Oakland-Alameda County Coliseum Auth. v. CC Partners,* 101 Cal.App.4th 635, 124 Cal.Rptr.2d 363, 370-71 (2002) (holding 'parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by statute'); *Crowell v. Downey Cmty. Hosp. Found.,* 95 Cal.App.4th 730, 115 Cal.Rptr.2d 810, 817 (2002) (holding '[b]ecause the legislature clearly set forth the trial court's jurisdiction to review arbitration awards when it specified grounds for vacating or correcting awards . . . , we hold that the parties cannot expand that jurisdiction by contract to include a review on the merits'); *Dick v. Dick,* 210 Mich.App. 576, 534 N.W.2d 185, 191 (1995) (holding, by agreeing to permit appeal of substantive issues, the 'parties have attempted to create a hybrid form of arbitration. However, we find no authority for it. Rather, we conclude that, having invoked binding arbitration, the parties are required to proceed according to the applicable statute and court rule'); but see *Maluszewski v. Allstate Ins. Co.,* 34 Conn.App. 27, 640 A.2d 129, 132 (1994) (stating '[i]f the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review would be broader depending on the specific restriction,' and if the restriction is that the arbitrator's award must conform to the law, the court would be bound to enforce the restriction)." 665 N.W.2d at 703.

While state courts have generally refused to enforce contractual provisions expanding the scope of review, federal courts of appeal addressing this issue are split.[5]

---

5. As I previously discussed in footnote 1 at page 19 of this opinion, the case law of the different states is divided as to whether a state court

*Kyocera Corp. v. Prudential-Bache Trade Services Inc.,* 341 F.3d 987 (9th Cir. 2003) (en banc) is the most recent decision of a federal court of appeals addressing this issue. The parties' agreement provided that a court shall vacate, modify, or correct an award on any of the grounds set forth in the Federal Arbitration Act, and, in addition, where the arbitrators' findings of fact are not supported by substantial evidence, or where the arbitrators' conclusions of law are erroneous. *Id.* at 990-91.

The court's opinion recognized that federal courts of appeals are split as to whether the parties can contractually expand the judicial standards for review of an arbitration award entered in arbitration proceedings governed by the Federal Arbitration Act. The opinion discussed the case law described in the next paragraph supporting the position that contractual provisions cannot expand the scope of review and the case law described thereafter supporting the position that these contractual provisions will be enforced.

In *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 933 (10th Cir. 2001), the Tenth Circuit refused to enforce a provision in the arbitration agreement that either party may seek to vacate the arbitration award on the ground that the award is not supported by the evidence. In *Chicago Typographical Union No. 16 v. Chicago Sun-Times Inc.,* 935 F.2d 1501, 1504-1505 (7th Cir. 1991), the Sev-

---

that is considering a petition to modify an arbitration award entered pursuant to the Federal Arbitration Act will apply the state law standards for vacating an arbitration award or the Federal Arbitration Act standards for doing so. This means that there is no clear authority as to whether the Pennsylvania courts should be applying federal case law or Pennsylvania case law in considering the enforceability of contractual provisions broadening the standard of review for FAA arbitration.

enth Circuit stated that the parties "cannot contract for *judicial* review" of an arbitration award; "federal jurisdiction cannot be created by contract." In *UHC Management Co. Inc. v. Computer Sciences Corp.,* 148 F.3d 992, 997-98 (8th Cir. 1998), the Eighth Circuit, in dicta, strongly suggested that the parties may not contractually expand judicial review of arbitration awards. Also see *Schoch v. InfoUSA Inc.,* 341 F.3d 785, n.3 789 (8th Cir. 2003), where the court stated: "[W]e again express skepticism as to whether parties can contract for heightened judicial review of arbitration awards, which would seemingly amend the FAA, crown arbitrators mini-district courts, force federal trial courts to sit as appellate courts, and completely transform the nature of arbitration and judicial review."

However, in *Roadway Package System Inc. v. Kayser,* 257 F.3d 287, 291-92 (3d Cir. 2001), the Third Circuit held that the Federal Arbitration Act permits parties to contract for vacatur standards other than those provided in the Act. Thus, the court would enforce an arbitration agreement providing for review standards borrowed from state law. In *Gateway Technologies Inc. v. MCI Telecommunications Corp.,* 64 F.3d 993 (5th Cir. 1995), the Fifth Circuit enforced an arbitration agreement providing for a de novo review for errors of law stating that the FAA's pro-arbitration policy intends for courts to enforce arbitration agreements according to their terms in the same fashion as other contracts are enforced.

After considering the decisions of the other federal courts of appeals, the majority opinion of the court en banc in *Kyocera* followed the case law limiting review to the grounds set forth in the Federal Arbitration Act:

"Because the constitution reserves to Congress the power to determine the standards by which federal courts render decisions, and because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision, we hold that private parties may not contractually impose their own standard on the courts." 341 F.3d at 994.

The Ninth Circuit may have been influenced by the scope of the task that the trial court would need to perform under the standard of review set forth in the arbitration agreement:

"Under the broad standard of review approved in *LaPine I* [130 F.3d 884 (9th Cir. 1997)], *Kyocera* presses at least 25 distinct grounds for vacating or correcting the decision of the arbitral panel due to alleged errors of law and unsubstantiated findings of fact. To decide a number of these issues—including whether it is reasonable for estoppel purposes to rely on an agreement not yet approved by a board of directors when the agreement takes effect only on board approval; whether an injured entity properly mitigates its damages when it refuses partial relief provided pursuant to an order of the court; and whether damages for the destroyed business value of a dissolved business may be calculated as of any date other than the date of contractual breach—would require a detailed examination of California law and the application of that law to a factual record spanning several years and many thousands of pages." 341 F.3d at 994.

The opinion of the Tenth Circuit in *Bowen v. Amoco Pipeline Co., supra,* sets forth most of the arguments in support of the position that parties may not expand judicial review. In *Bowen,* the arbitration provision that the

court refused to recognize provided that either party may appeal on the ground that the award is not supported by the evidence. The court concluded that the purposes behind the Federal Arbitration Act do not support a rule allowing parties to alter the judicial process by private contract.

According to the Tenth Circuit, Congress enacted the Federal Arbitration Act in 1925 with the primary goal of changing the judiciary's refusal to enforce arbitration clauses in private contracts. While the Act provides for the courts to enforce contractual provisions setting forth procedural rules under which arbitration will be conducted, there is nothing within the Act stating that the parties are free to interfere with the judicial process. There is simply no authority for allowing private parties to determine how federal courts review arbitration awards. 254 F.3d at 934. The court stated that it would reach an "illogical result" if it concluded that the policy of insuring judicial enforcement of arbitration agreements is well-served by allowing more expansive judicial review following the arbitration. "The FAA's limited review ensures judicial respect for the arbitration process and prevents courts from enforcing parties' agreements to arbitrate only to refuse to respect the results of the arbitration." *Id.* at 935.

Contractually expanded standards would threaten "to undermine the independence of the arbitration process and dilute the finality of arbitration awards because, in order for arbitration awards to be effective, courts must not only enforce the agreements to arbitrate but also enforce the resulting arbitration awards." *Id.* Also, expanded judicial review would place the courts "in the awkward position of reviewing proceedings under potentially unfamiliar rules and procedures. Under either expanded

legal or expanded factual standards, the reviewing court would be engaging in work different from what it would do if it had simply heard the case itself. . . . Because parties may not force reviewing courts to apply unfamiliar rules and procedures, expanded judicial review would threaten the independence of arbitration and weaken the distinction between arbitration and adjudication." *Id.* at 935-36. (citations omitted; footnote omitted)

Related arguments recognized in other decisions are that the parties to the litigation may not determine how public resources are to be spent and how judicial resources are to be used. A broad merit-based review of arbitration awards lessens the social desirability of arbitration. A hybrid process in which the arbitration panel serves merely as a privately-constituted court of first resort, leaving the courts with the ultimate decisional authority on the merits, undermines the arbitration process that Congress envisioned in which the judicial role is essentially to facilitate and ensure procedural fairness, and not to resolve or review the merits of the parties' dispute.

The arguments in favor of enforcing arbitration agreements permitting enhanced merit-based review of an arbitration award begin with a different characterization of the Federal Arbitration Act. This Act, according to the proponents of enhanced review, did not envision any specific roles for the arbitrators and the courts. The standards of section 10(a) of the Federal Arbitration Act for vacating an arbitration award are default standards that apply if the parties do not develop their own standards.[6]

---

6. In this opinion, I have not mentioned section 11 of the Federal Arbitration Act governing the modification and correction of an arbitration award. The same arguments apply.

The purpose of the Federal Arbitration Act was to place agreements governing arbitration on the same footing as any other contractual agreements. Any agreement that the parties reach regarding the matters that shall be arbitrated, the manner in which these matters shall be arbitrated, and the scope of judicial review are intended to be enforced in the same fashion as any other contractual arrangements.

Proponents of enhanced review also contend that, if courts will not enforce provisions for expanded judicial review of arbitration awards, parties who would have otherwise arbitrated their disputes will not do so. Thus, the refusal to enforce provisions for expanded judicial review is inconsistent with the primary goal of the Federal Arbitration Act of encouraging arbitration.

Proponents of enhanced judicial review reject the argument that enhanced review should not be recognized because it allows the parties to dictate the use of judicial resources and requires courts to perform functions that they do not ordinarily perform. The typical agreement providing for expanded judicial review provides for a vacation of an arbitration award based on errors of law and a lack of evidentiary support. These are standards that courts frequently apply, and the judicial resources expended in conducting such a review are far less than those resources that would be expended through a trial of the dispute.

There are middle positions that judges have taken.

The Ninth Circuit opinion by the court en banc in *Kyocera Corp.* reversed a ruling of a three-judge court in *LaPine Technology Corp. v. Kyocera,* 130 F.3d 884 (9th Cir. 1997), which reversed the lower court's use of

the section 10 standards of the Federal Arbitration Act rather than the broader contractual provisions of the arbitration agreement. A concurring opinion by Judge Kozinski in *LaPine* recognized that, while enforcing an arbitration agreement with enhanced judicial review will consume fewer judicial resources than if the case were given plenary adjudication, the work that the district court must perform under the arbitration clause is not a subset of what it would be doing if the case were brought directly in the court. "It's not just less work, it is *different* work." However, Judge Kozinski concluded that:

"Nevertheless, I conclude that we must enforce the arbitration agreement according to its terms. The review to which the parties have agreed is no different from that performed by district courts in appeals from administrative agencies and bankruptcy courts, or on habeas corpus. I would call the case differently if the agreement provided that the district judge would review the award by flipping a coin or studying the entrails of a dead fowl."

In *Crowell v. Downey Community Hospital Foundation,* 115 Cal. Rptr. 2d 810 (Cal. Ct. App. 2002), the majority opinion upheld the ruling of the trial court that the parties could not expand the court's jurisdiction to review the arbitration award beyond that provided by statute; the provision the court would not enforce provided for an award to be vacated if based on an error of law or if not supported by substantial evidence. In a dissenting opinion, Judge Nott stated that he would not enforce all stipulations to have a court act in excess of statutory authority. "Each stipulation must be analyzed in terms of what the impact is not only on the parties, but also on public policy considerations, and on the func-

tioning of the courts. . . . [I]t would be inappropriate for the parties to stipulate that the court act or decide a case in a manner inconsistent with normal standards of judicial conduct." *Id.* at 825. (citations omitted)

In this case, Judge Nott did not see any reason why it would be inappropriate for the trial court to act in accordance with the wishes of the parties that the review of an arbitration award include reviewing the award for errors of law and sufficiency of the evidence:

"The court would have before it a transcript from which to make an intelligent review, and the standard of review is the same used in many administrative mandamus proceedings. The public would benefit from having the main burden of work performed by an arbitrator at private expense, rather than using a public court. The review to be performed by the trial court for errors of law and sufficiency of the evidence would undoubtedly take less time (and thus less public expense) than if the matter were originally tried by the court." *Id.* at 825-26.

While I find to be persuasive the case law holding that courts should not enforce provisions expanding the scope of review of an arbitration award, in this case I need not decide whether there are additional grounds for vacating an arbitration award set forth in an arbitration agreement (such as a de novo review for issues of law) that the Pennsylvania courts will enforce. In this opinion, I am deciding only that Pennsylvania courts will not enforce an agreement providing for a de novo review of an arbitration award.

The parties' "arbitration" agreement is not an alternative method for resolving the dispute. By utilizing the standard of a de novo review, the parties essentially by-

pass the arbitrators. The common pleas court would not be conducting a review of the arbitration award because the court is not to give any weight to the decision of the arbitrators. Instead, it would decide the case on the merits based on the testimony and exhibits furnished in the arbitration proceeding.

There are several reasons why the Pennsylvania courts should not enforce this provision. First, the procedure provided for in the agreement which makes the judge the trier of fact but requires the judge's decision to be based on the record of the arbitration proceedings undermines the integrity of the judicial process. Perhaps the most important tool that a judge has for reaching the right result in a non-jury trial is his or her ability, as the trier of fact, to ask questions of the witnesses to ensure that he or she fully understands the testimony of each witness. In addition, the trier of fact should be making the rulings that determine the scope of the testimony. The reputation of the courts will suffer if the parties may impose restrictions on the manner in which the court may conduct its de novo review that significantly interfere with the quality of the decision-making process.

Also, a "de novo review" standard should not be enforced because arbitration proceedings that are subject to a de novo review do not necessarily conserve judicial resources. While it may be argued that it is quicker to read, rather than hear, the testimony, it is unlikely that in this case a common pleas court judge can decide the case through a single reading of the transcript that exceeds 2,200 pages. Furthermore, it is extremely likely that a competent trial judge, by working with counsel before and during trial, would have significantly reduced the amount of testimony that the parties offered. Questions

that a judge asks a witness may eliminate the need for more prolonged testimony. A judge may direct counsel to limit a witness' testimony to matters that are disputed. The testimony of a witness that is not disputed can be introduced through deposition excerpts. There may be a place for leading questions and summaries of testimony.

Also, the de novo review sought through a petition to vacate an arbitration award is outside the scope of the tasks that judges perform, so there are no established procedures governing the role of the courts. Does the trial judge enter an award, a decision, or a judgment? Is the trial court required to make findings of fact and conclusions of law; does this depend on whether the arbitrators were required to do so? Are there any additional steps that must be taken by a party who is satisfied with the ruling of the trial judge, such as filing a petition to confirm an arbitration award? Does a party who is dissatisfied with the ruling of the trial court file a petition with the trial court to vacate the arbitration award, a motion for post-trial relief, or a direct appeal to the appellate courts? What issues may be presented to the appellate courts and how are they raised/preserved? What is the role of the appellate courts?

Judicial resources should not be utilized to address these procedural issues created by an agreement of the parties that would place a court in an unfamiliar setting. Thus, courts should not enforce agreements that will place a court in this position.

For the reasons set forth in this opinion, I am denying the Trombettas' request for a de novo review of the arbitration award. Since the Trombettas' brief focused on why this court, in conducting the de novo review of the record, should rule in their favor, I am scheduling a second ar-

gument at which the parties will address the issues that remain as a result of this ruling that the provision in the parties' arbitration agreement providing for a de novo review will not be enforced.

## ORDER

On March 2, 2005, it is hereby ordered that:

(1) petitioners' request for a de novo review of the arbitration award is denied;

(2) oral argument will be held on the remaining issues on April 19, 2005 at 11 a.m. o'clock; and

(3) the Trombettas shall file a supplemental brief addressing the remaining issue within 14 days of this date, Financial Services shall file a supplemental brief in response within 28 days of this date, and the Trombettas may file a reply addressing the supplemental brief of Financial Services within 35 days of this date.